**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AFZA ANJUM, JANET TERRANA, VERONICA MONAHAN and CAMILLE FOREST, on behalf of themselves and all others similarly situated, | CIVIL ACTION NO. 13-CV-00460(RJD)(RER) |
| Plaintiffs | **ECF CASE** |
| v. | |
| J.C. PENNEY COMPANY, INC., J.C. PENNEY CORPORATION, INC., | <u>**Oral Argument Requested**</u> |
| Defendants. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION UNDER THE FAIR LABOR STANDARDS ACT**

---

BRESSLER, AMERY & ROSS, PC
325 Columbia Turnpike
Florham Park, New Jersey 07932
Tel: (973) 514-1200
Fax: (973) 514-1660

Attorneys for Defendants

Of Counsel:

    Jed L. Marcus, Esq. (JM 0163)

On the Brief:

    Jed L. Marcus, Esq. (JM 0163)
    Tracey Salmon-Smith, Esq. (TS 4642)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................iii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF RELEVANT FACTS ............................................................... 3

    A.   jTime Rounds Both Up and Down............................................................ 4

    B.   jcpenney's 2010 Audit Confirms Accurate Rounding .......................... 5

    C.   jcpenney Associates Are Trained in Proper Timekeeping................... 6

    D.   No Automatic Deductions for Meal Periods ......................................... 8

    E.   Team Members are Notified About Changes in Their Time Records.............. 11

    F.   Plaintiffs' Employment History with jcpenney ................................... 11

    G.   Plaintiffs' Cannot Show that jcpenney Deprived Them of Compensation ........ 13

    H.   The Declarations of Plaintiffs' Co-Workers Refute Plaintiffs' Claims ............... 15

    I.   Plaintiffs' Class Allegations ............................................................. 16

ARGUMENT ................................................................................................... 18

POINT I. ......................................................................................................... 18

    PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION MUST
    BE DENIED BECAUSE THE PLAINTIFFS HAVE FAILED TO
    DEMONSTRATE THAT THEY ARE SIMILARLY SITUATED TO THE
    PUTATIVE CLASS.

    A.   Plaintiffs Have Not Met Even Their Lenient Burden of Establishing that
    They Are Similarly Situated to Anyone............................................. 19

    B.   The Record Is Devoid of a Factual Nexus Linking Plaintiffs' Claims to the
    Putative Class. ................................................................................ 20

POINT II. ........................................................................................................ 25

    THE CONSENT FORMS FILED BY PLAINTIFFS SHOULD BE
    STRICKEN.

i

**Page**

POINT III. ........................................................................................................ 29

       THE SCOPE AND MANNER OF NOTICE, IF CONDITIONAL CERTIFICATION IS APPROPRIATE, SHOULD BE LIMITED AND AMENDED.

A.    The Court Should Limit Notice to Employees in Staten Island ........................ 30

B.    The Court Should Limit Notice to Employees Over the Last Three Years ....... 30

C.    The Notice Fails to Define the Class ................................................ 31

D.    References to "Straight Time" Should Be Stricken .......................... 32

E.    The Notice Should Contain Notice to Potential Class Members that They Have Monetary and Other Obligations .............................................. 33

F.    The Notice Should Identify Defendants' Counsel ............................. 33

G.    Consent Forms Should Be Sent to the Clerk of the Court ................ 33

H.    The Notice Has Other Important Flaws ........................................... 33

CONCLUSION ............................................................................................ 35

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

CASES

Ahmed v. TJ Maxx, No. 10-cv-609, 2013 WL 2649544 (E.D.N.Y. 2013)....................... 21

Alaniz v. Sam Kane Beef Processors, Inc., No. CC-07-335, 2007 WL
4290659 (S.D. Tex. 2007) ........................................................................................... 29

Barfield v. N.Y. City Health and Hospital Corp., No. 05 Civ 6319, 2005 WL
3098730 (S.D.N.Y. 2005) ............................................................................................ 23

Beery v. Quest Diagnostics, Inc., No. 12-cv-00231, 2013 U.S. Dist. LEXIS
95096 (D.N.J. 2013)..................................................................................................... 26

Bouder v. Prudential Fin., Inc., No. 06-CV-4359 (DMC), 007 WL 3396303
(D.N.J. Nov. 8, 2007).................................................................................................... 29

Cano v. Four M. Food Corp., No. 08-cv-3005, 2009 U.S. Dist. LEXIS 7780,
(E.D.N.Y. 2009) ..................................................................................................... 24, 33

Chemi v. Champion Mortg., 05-cv-1238, 2006 U.S. Dist. LEXIS 97925
(D.N.J. 2006) ............................................................................................................... 29

Cintron v. Hershey Puerto Rico, 363 F. Supp. 2d 10 (D.P.R. 2005)............................. 29

Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200 (N.D.N.Y.
2009)............................................................................................................................ 22

Dejesus v. HF Management Services, No. 12-4565, 2013 U.S. App. LEXIS
16105 (2d Cir. 2013) ................................................................................................... 21

Diaz v. Electronics Boutique of America, Inc., No. 04-cv-0840E, 2005 WL
2654270 (W.D.N.Y. 2005) ........................................................................................... 20

Diaz v. S&H Bondi's Dep't Store, Inc., 10-civ-7676, 2012 U.S. Dist. LEXIS
5683 at *24 (S.D.N.Y. 2012)........................................................................................ 33

Douglas v. Constructamax, Inc., No. 10-cv-5323, 2011 U.S. Dist. LEXIS
48248 (E.D.N.Y. 2011) ................................................................................................ 30

Eng-Hatcher v. Sprint Nextel Corp., No. 07-cv-7350, 2009 WL 7311383
(S.D.N.Y. 2009) ..................................................................................................... 20, 23

Fengler v. Crouse Health Foundation, Inc., 595 F. Supp. 2d 189 (N.D.N.Y.
2009)............................................................................................................................ 22

Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013)................................... 26

Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101 (S.D.N.Y.
2003) .............................................................................................................. 20, 24, 33

Gonzalez v. Ridgewood Landscaping, Inc., Civil Action No. H-09-2992,
2010 U.S. Dist. LEXIS 45245 (S.D. Tex. 2010)........................................................... 28

**Page**

Guillen v. Marshalls of MA, Inc., No. 09-cv-9575, 2012 WL 2588771
(S.D.N.Y. 2012) ................................................................................................ 20

Hallissey v. America Online, Inc., No. 99 Civ. 3785, 2008 WL 465112
(S.D.N.Y. 2008) .......................................................................................... 28, 33

Hamadou v. Hess Corp., No.12-cv-0250, 2013 WL 164009 (S.D.N.Y. 2013) .............. 31

Hamelin v. Faxton-St. Luke's Healthcare, No. 08-cv-1219; 2009 WL 211512
(N.D.N.Y. 2009) ........................................................................................... 22, 25

Hanchard-James v. Brookdale Family Care Centers, No. 12 Civ.1922, 2012
WL 3288810 (E.D.N.Y. 2012) ........................................................................... 30

Heitmann v. City of Chicago, No. 4-C-3304, 2004 U.S. Dist. LEXIS 14669
(N.D. Ill. 2004) .................................................................................................. 29

Ikikhueme v. Culinart, Inc., No. 13 Civ. 00293, 2013 WL 2395020 (S.D.N.Y.
2013) ................................................................................................................ 23

Jenkins v. TJX Companies, Inc., 853 F. Supp. 2d 317 (E.D.N.Y. 2012) ...................... 20

Jones v. Casey's Gen. Stores, 517 F. Supp. 2d 1080 (S.D. Iowa 2007) ...................... 27

Laroque v. Domino's Pizza, LLC., 557 F. Supp. 2d 346 (E.D.N.Y. 2008)............... 20, 30

Levinson v. Primedia, Inc., No. 02 Civ. 2222, 2003 WL 22533428 (S.D.N.Y.
2003) ................................................................................................................ 24

Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504 (S.D.N.Y. 2010) .............................. 19

Lujan v. Cabana Management, Inc., No.10-cv-755, 2011 WL 317984
(E.D.N.Y. 2011) .......................................................................................... 30, 31

Lundy v. Catholic Health System of Long Island, 711 F.3d 106 (2d Cir.
2013) .......................................................................................................... 21, 32

Mohamed M. Ali v. New York City Health and Hospitals Corporation, No. 11-
cv-6393, 2013 WL 1245543 (S.D.N.Y. 2013) ................................................... 23

Monger v. Cactus Salon & Spa's LLC, No. 08-cv-1817, 2009 WL 1916386
(E.D.N.Y. 2009) ................................................................................................ 30

Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54 (E.D.N.Y. 2011) .................................. 33

Morales v. Plantworks, Inc., No. 05-cv-2349, 2006 WL 278154 (S.D.N.Y.
2006) ................................................................................................................ 20

Myers v. Hertz Corp., 624 F.3d 537 (2d Cir. 2010)........................................... 18, 19, 23

Myers v. Hertz Corp., No. 02-cv-4325, 2007 WL 2126264 ........................................... 22

Nakahata v. New York-Presbyterian Healthcare System, Inc., No. 11-0734, 2013 WL 3743152 2013 U.S. App. LEXIS 14128 (2d Cir. 2013)................................... 21

Partlow v. Jewish Orphans' Home, Inc., 645 F.2d 757 (9th Cir. 1981) .......................... 28

Prizmic v. Armour, Inc., No. 05-cv-2503, 2006 WL 1662614 (E.D.N.Y. 2006) ................................................................................................................... 19

Romero v. HB Auto. Grp., Inc., No. 11-cv-386, 2012 WL 1514810 (S.D.N.Y. 2012) ................................................................................................................... 19

Ruggles v. Wellpoint Inc., 591 F. Supp. 2d 150 (N.D.N.Y. 2008) ............................ 27, 28

Salomon v. Adderley Indus., Inc., 847 F. Supp. 2d 561 (S.D.N.Y. 2012) ..................... 33

Schick v. Berg, No. 03-5513, 2004 U.S. Dist. LEXIS 6842 (S.D.N.Y. 2004) ................ 27

Sexton v. Franklin First Financial, Ltd., No. 08-cv-04950, 2009 WL 1706535 (E.D.N.Y. 2009)........................................................... 25, 28, 32, 33

Slamna v API Rest. Corp., No. 12-civ-757, 2013 U.S. Dist. LEXIS 93176 (S.D.N.Y. 2013)................................................................................................. 32, 33

Sobczak v. AWL Indus., Inc., 540 F.Supp.2d 354 (E.D.N.Y. 2007)........................ 30, 31

Soler v. G & U, Inc., 568 F. Supp. 313 (S.D.N.Y. 1983) ................................................. 27

Summa v. Hofstra Univ., 715 F. Supp. 2d 378 (E.D.N.Y. 2010).................................... 24

Woods v. New York Life Ins. Co., 686 F.2d 578 (7th Cir. 1982).............................. 26, 27

**STATUTES**

29 U.S.C. § 216(b) ................................................................................................ 18, 29

**RULES**

Fed. R. Civ. P. 68 ....................................................................................................... 2

Fed. R. Evid. 602, 802.............................................................................................. 20

J.C. Penney Company, Inc. and J.C. Penney Corporation, Inc. (collectively "Defendants" or "jcpenney") respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion for Approval of Collective Action Notice filed on May 30, 2013 ("Plaintiffs' Motion") (ECF Doc. 18).  Defendants request oral argument in this matter.

## PRELIMINARY STATEMENT

The named plaintiffs are four former jcpenney associates, each of whom worked only at jcpenney's Staten Island store, who filed a lawsuit claiming that jcpenney failed to pay them for work they performed either during their unpaid meal periods or before or after their assigned shifts.  They also allege that jcpenney maintained an unlawful automatic rounding policy that rounded punches exclusively to the disadvantage of its associates.  As a result, they allege, jcpenney failed to pay them required straight and overtime pay.  jcpenney denies all these allegations and will demonstrate herein that they are not supported by fact.

Plaintiffs filed their original complaint on January 25, 2013, and their first amended complaint on May 9, 2013.  Based on nothing other than their own limited experience working at the Staten Island store, Plaintiffs seek conditional certification of a class of all current and former sales associates performing sales work at *any* jcpenney retail store throughout the *entire* state of New York.  For jcpenney, an operator of retail stores throughout the United States and Puerto Rico, this purported class would encompass nearly 3,500 current hourly sales associates in 47 stores.

Plaintiffs' request for conditional certification of all New York sales associates is based on two unsupported allegations: (1) jcpenney engaged in a common plan or scheme to deprive associates of straight and overtime compensation, including unlawful

automatic rounding of time and automatic meal deductions; and (2) jcpenney's common plan or scheme extended to 47 stores in the state of New York.  Discovery has shown these allegations false.  Allegations of unlawful rounding and automatic meal deductions proved demonstrably untrue.  In their depositions, Plaintiffs were unable to identify any specific instances in which they were denied compensation for time worked, let alone point to evidence to support their allegation of the existence of any unlawful plan or scheme.  Moreover, as Plaintiffs admitted in their declaration, their assertion that the so-called plan or scheme extended to all other jcpenney stores in New York State, is based on nothing more than their "belief."  In fact, Plaintiffs are not similarly situated to **anyone** outside of Staten Island with respect to their claims that they were improperly compensated. Hearsay comments attributable to unidentified associates at other stores do not strengthen their case; Plaintiffs cannot rely on alleged conversations with other unnamed or partially-identified employees at other unnamed stores.

The obvious reason for Plaintiffs' rush to the courthouse with such flimsy supporting evidence is that on May 21, 2013, jcpenney served them with Offers of Judgment pursuant to Fed. R. Civ. P. 68.  These Offers of Judgment include all damages that the Plaintiffs seek in their First Amended Complaint, exceeding any amounts Plaintiffs could receive at trial, thus mooting their case and depriving the Court of subject matter jurisdiction, even though they ultimately rejected the Offers of Judgment.[1] Plaintiffs filed their motion on May 30, 2013, four days before the offers of judgment were to expire.  The premature filing of the Plaintiffs' Motion was just an attempt, albeit an unsuccessful one, to avoid the mooting of Plaintiffs' claims.

---

[1] jcpenney served its Motion to Dismiss for Lack of Subject Matter Jurisdiction on August 13, 2013 in accordance with the Court's bundle rule.

Whether or not the Offers of Judgment moot Plaintiffs' lawsuit, Plaintiffs' Motion should be denied. Irrespective of the composition of the class, Plaintiffs' Motion fails to provide any evidence sufficient to show that they are similarly situated to anyone outside of Staten Island.  They have failed to provide sufficient evidence to establish a factual nexus that can somehow tie their allegations to those of the putative class.

### STATEMENT OF RELEVANT FACTS

1.      jcpenney, one of America's leading retailers, operates over 1,000 jcpenney department stores throughout the United States and Puerto Rico, as well as one of the largest apparel and home furnishing sites on the Internet, jcp.com. It currently operates 47 stores in the state of New York, employing approximately 3,500 sales associates. (Grandison Decl. ¶ 2.[2])

2.      jcpenney compensates all of its employees in accordance with applicable law. All non-exempt employees are paid on an hourly basis and receive overtime at time and one-half for all hours worked over forty in a given week. (Grandison Decl. ¶ 3.)

3.      jcpenney employs a computerized timekeeping system known as "jTime." (Forest Dep. Tr. 102:20-25; 102:1-4.[3])  Briefly, jTime is configured to ensure that it complies with all jcpenney timekeeping policies and procedures as well as all applicable federal and state employment laws. (Jones Decl. ¶ 2; Huggett Decl. ¶ 2.[4])

---

[2] The Declaration of Diana Grandison ("Grandison Decl.") is attached as <u>Exhibit 1</u> to the Declaration of Jed Marcus ("Marcus Declaration".)
[3] The deposition transcript of Camille Forest (Forest Dep.) is attached as <u>Exhibit 2</u>  to the Marcus Declaration
[4] The Declarations of Mark Jones ("Jones Decl.") and Tauyna Huggett ("Huggett Decl ") are attached as <u>Exhibits 3 and 4</u>, respectively, to the Marcus Declaration.

**A.     jTime Rounds Both Up and Down**

4.     jcpenney does not, as Plaintiffs claim, employ an automatic rounding system that rounds only in one direction and to the disadvantage of its associates (sometimes also referred to as "team members"). In this regard, jTime is configured so that clock punches are rounded ***both up and down*** to the nearest one tenth of an hour (6 minutes). jTime is configured so that punches will round ***up or down*** by no more than a tenth of an hour. In actual practice, automatic rounding will be up or down by no more than three minutes in either direction. (Jones Decl. ¶ 3; Huggett Decl. ¶ 3.)

5.     The rounding chart shown below, taken from a jcpenney internal audit, demonstrates how the Company's system works:



As an example, consider a scenario in which a team member clocks in or out at any time between 15 and 20 minutes after the hour.  jTime is configured so that if the team member clocks in or out between 15, 16 or 17 minutes after the hour, the clock in or out is rounded **up** and recorded as though the team member clocked in at 18 minutes after the hour.  If, on the other hand, the team member clocks in or out either 19 or 20 minutes after the hour, the recorded clock in or out is rounded **down** to 18 minutes.

Similarly, if the team member clocks in or out either 33, 34 or 35 minutes after the hour, the recorded clock-in or out will be rounded up to 36 minutes after the hour, while if the team member clocks in or out either 37 or 38 minutes after the hour, the recorded clock in or out will be rounded **down** to 36 minutes. (Huggett Decl. ¶ 4.)

**B.    jcpenney's 2010 Audit Confirms Accurate Rounding**

6.    In 2010, jcpenney performed a detailed internal audit on jTime to ensure that it was operating correctly.  (Id. at ¶ 5.)  The audit was designed so that 15 team members were randomly selected from across the United States and another 5 team members from Puerto Rico.  One of the team members randomly selected was from a store in New York State. (Huggett Decl. ¶ 5.)

7.    In performing the audit, jcpenney examined the payroll and jTime punch records for the randomly-selected team members.  The audit confirmed that the system accurately rounded all punch records consistent with the automatic rounding rules set out in the jTime manuals. No exceptions were found.  The auditors also calculated and verified the time worked for each associate, including premium pay periods, by examining payroll earnings.  Again, no exceptions were found.  Finally, Defendants summarized all final clock punches for the days reviewed and verified that they all ended in the proper rounding rules. In other words, the punches rounded to the exact time configured in jTime.  Once again, no exceptions were found. (Id. at ¶ 6.)

8.    In sum, the jcpenney audit revealed that the automatic rounding was balanced in consistently rounding up or down by no more than 6 minutes, pursuant to the jTime automatic rounding rules and the logic configured into jTime, without creating any disadvantage to the team member. (Id. at ¶ 7.)

-5-

**C.     jcpenney Associates Are Trained in Proper Timekeeping**

9.      jcpenney's jTime Time Attendance Commission Guide ("jTime TAC Guide") explicitly requires that all associates clock-in when they are working and clock-out when they are not working:

> **[1400] Clocks-Recording of Time**
>
> All Hourly Associates are required to record time worked for all shifts and meal periods. Using the Time Clock to record time in and out is the most important thing an associate can do to ensure that their pay period is processed accurately. **Associates may use multiple Time Clocks for recording time. Associates on IRT or Leave are NOT able to use the Time Clock. If the associate believes that they should be able to work, have the associate contact Power Line.**

(Jones Decl. ¶ 4, Exhibit 1) (emphasis in original).  The jTime TAC Guide also includes the following instruction:

> **[1403] Sales Floor Associates**
>
> Sales floor associates should record time for all shifts and meals at the POS Terminal, unless performing work before reporting to or after leaving the sales floor.
>
> Please ensure associates understand appropriate use of the POS Terminal Time Clocks and the back office Wall Time Clock. The back office Wall Time Clock is to be used when the associate is working before or after leaving the sales floor.
>
> As associate must be on the clock when performing any work such as taking till bags to the sales floor, meeting with a manager or picking up signing.

(Id. at ¶ 5, Exhibit 2.)

10.     jcpenney carefully trains its associates at all stores on its timekeeping policies and procedures.   When associates are first hired, they participate in an orientation program.   During orientation, a training supervisor carefully instructs all employees about jcpenney's timekeeping procedures.   The training supervisor brings them to a physical time clock and shows them how to clock-in and out.   The training

supervisor will also show them what to do if they forget to clock-in or out, either at the beginning or end of the shift or for a meal period.  (*See* Forest Dep. Tr. 107:12-25; 108:1-21; 109:25; 110:1-5; 111:5-17; Terrana Dep. Tr. 53:24-25; 54:1-25; 55:1-25; Anjum Dep. Tr. 77:18-25; 78:1-25; 79:1-18; Drozdowski Dep. Tr. 59:23-25; 60:1-25; 61:1-2; McDonnell Decl. ¶ 5; Bryan Decl. ¶ 5; Rios Decl. ¶ 5; Abadessa Decl. ¶ 5; Gilmore Decl. ¶ 6.[5]) In addition, regular meetings between management and associates are scheduled during the year during which timekeeping issues are often raised and discussed. (Forest Dep. Tr. 112;24-25; 113:1-5; McDonnell Decl. ¶ 6; Bryan Decl. ¶ 13; Abbadessa Decl. ¶ 15; Rios Decl. ¶ 16; Nasaire Decl. ¶¶ 3,4, 6, 7; Gilmore Decl. ¶ 7.[6])

11.     At the time of hire, associates also receive an employee handbook, titled the "Associate Guide to Winning Together," which describe the associates' various responsibilities and benefits. (Forest Dep. Tr. 113:11-13; Marcus Declaration, Exhibit 14.[7]) In relevant part, the Guide states:

> **Pay**
>
> . . . You can also view your paycheck details online on the Associate Kiosk. Review your paycheck carefully to be sure the hours you are paid and the deductions reflected on your paycheck are correct. If you have any questions or concerns about your pay, you should discuss them immediately with your supervisor or Human Resources representative.

*      *      *

---

[5] See the declarations of Delrose Bryan ("Bryan Decl "), Benita Rios ("Rios Decl."), Karolin Abbadessa ("Abbadessa Decl."), Bernice McDonnell ("McDonnell Decl.") and Elizabeth Gilmore ("Gilmore Decl."), attached as Exhibits 5, 6, 7, 8 and 9, respectively, to the Marcus Declaration and the deposition transcripts of Janet Terrana ("Terrana Dep."), Afza Anjum ("Anjum Dep.") and John Drozdowski, attached as Exhibits 10, 11 and 12, respectively, to the Marcus Declaration.

[6] See the declaration of Alie Nasaire ("Nasaire Decl."), attached as Exhibit 13 to the Marcus Declaration.

[7] A true and authentic copy of the Associate Guide is attached as Exhibit 14 to the Marcus Declaration.

**Overtime**

The Company understands that you have commitments outside of your job. For that reason, we try to limit last-minute changes to your work schedule. But sometimes, business needs change unexpectedly. So on occasion you may be asked—and expected—to work beyond your normal scheduled hours. If you are in an hourly or commissioned position and that happens, you will be paid at the appropriate hourly rate. You shouldn't work outside your scheduled hours without your Supervisor's prior approval.

(Associate Guide at 21-22.)

12.    Plaintiffs knew that jcpenney required accurate timekeeping. Forest recalled that she was specifically told not to clock out if she was working. (Forest Dep. Tr. 108:14-17.) Monahan was told that it was important that her timekeeping be accurate, clocking in at the beginning of her shift and clocking out at the end of her shift (Monahan Dep. Tr. 120:9-19.[8]) Anjum testified that she was told: "when you come to work, punch in. When you are going home[, ]punch out. During meal breaks, you punch out and you punch in," and she understood jcpenney's policy to be that clocking in and clocking out should be an accurate reflection of the actual time that she worked during her workday. (Anjum Dep. Tr. 83:7-10; 84:14-18.)

**D.    No Automatic Deductions for Meal Periods**

13.    jcpenney requires all hourly associates to clock-in and out for all shifts and meal periods. ***There are no exceptions***. (Drozdowski Dep. Tr. 56:7-25; 57:1-2; 74:21-25; 75:1-5; 83:22-25; 84:1-12.) They must clock-in at the beginning of the shift and clock out at the end of the shift. If they are scheduled to take a meal, they must clock-in at the beginning of the meal period and clock-out at the end of the meal period. (Monahan Dep. Tr. 101:10-25; 102:1-9.) jTime expects four punches, or two "paired

---

[8] The deposition transcript of Veronica Monahan ("Monahan  Dep. Tr." ) is attached as <u>Exhibit 15</u>  to the Marcus Declaration

punches," unless a team member is not scheduled to take a meal period, in which case she will have only two "paired" punches.  (Jones Dec. ¶ 7; McDonnell Decl. ¶ 3; Bryan Decl. ¶ 3; Rios Decl. ¶ 3; Nasaire Decl. ¶ 3, 4; Abbadessa Decl. ¶ 3; Gilmore Decl. ¶ 4.)

14.    Meal periods are <u>not</u> automatically deducted from an associate's pay. (Drozdowski Dep. Tr. 81:15-25; 82:1-19; 83:4-21; 84:2-25; 85:1-10; 93: 22-25; 94:1-8; Jones Decl. ¶ 6; McDonnell Decl. ¶ 2; Bryan Decl. ¶ 2; Rios Decl. ¶ 2; Abbadessa Decl. ¶ 2; Nasaire Decl. ¶ 8; Gilmore Decl. ¶ 3.)   jTime is simply not configured to automatically deduct meal periods. (Huggett Decl. ¶ 10.)

15.    jTime generates reports, on a daily basis, that identify those team members who have less than four punches associated with their work day.   For example, a team member may not have clocked-in at the beginning of her shift or out at the end of the shift.  One such report is called the "Unauthorized Records Report." Upon receipt of such a report, store leadership will investigate to determine what happened. (Nasaire Decl. ¶ 9; Jones Decl. ¶ 8.)

16.    All associates who are scheduled to take a meal period must clock-in at the beginning of the meal period and clock-out at the end of the meal period. (Terrana Dep. Tr. 57:1-11; Jones Decl. ¶ 7; McDonnell Decl. ¶ 3; Bryan Decl. ¶ 3; Rios Decl. ¶ 3; Nasaire Decl. ¶¶ 3, 9; Abbadessa Decl. ¶ 3; Gilmore Decl. ¶ 4.)  Occasionally, however, associates would forget to clock-out for their meal period, or otherwise forgot to clock in or out. In that case they would manually report their time on a "Manual Time Sheet." (Forest Dep. Tr. 110:6-24; Terrana Dep. Tr. 58:14-25; 59:1-3; Anjum Dep. Tr. 80:21-25; 81:1-6.)  Plaintiffs admitted that they sometimes forgot to clock in or out, and in such cases they would use the Manual Time Sheet.  (Forest Dep. Tr. 110:19-24; 111:5-17;

-9-

112:6-12; Terrana Dep. Tr. 14-20; 65:19-24; Anjum 81:1-6.)   Monahan testified that when she reported to her manager that she had forgotten to clock-in, her manager simply stated: "don't worry, what time did you come in, and he would just put it down." (Monahan Dep. Tr. 73:7-13.)

      17.    When associates forget to clock-out for their meal period, the missed clock out (often referred to as an "unpaired punch") is identified on a report generated by jTime called a "Meal Not Taken Report." (Jones Decl. ¶ 9;Bryan Decl. ¶ 8; Rios Decl. ¶ 9; Abbadessa Decl. ¶ 7; McDonnell Decl. ¶ 9; Gilmore Decl. ¶ 12; Nasaire Decl.¶ 9.) And once again, the Manual Time Sheet is examined to see whether the team member manually advised the store that she took lunch and forgot to clock-in or clock-out. (Huggett Decl. ¶13, Bryan Decl. ¶ 8; Rios Decl. ¶ 8; Abbadessa Decl. ¶ 8.) If that is the case, the time record is corrected.  (Forest Dep. Tr. 112:10-17.)  If the team member did not manually record her meal period, store leadership will investigate. (Rios Decl. ¶ 9; Abbadessa Decl. ¶ 8; McDonnell Decl. ¶ 9; Gilmore Decl. ¶ 12; Nasaire Decl. ¶ 9.) If the team member took lunch, prior to March 2013, an Office Specialist would correct the time record. (Nasaire Decl. ¶ 9; Bryan Decl. ¶ 8; McDonnell Decl. ¶ 9.) Since the position of Office Specialist was eliminated in March 2013, such corrections have been made by the Talent Resource Leader.  (Nasaire Decl. ¶ 9.)  If the team member worked through the meal period, she would be paid, whether or not he or she received permission to do so. (Huggett Decl. ¶ 13; (McDonnell Decl. ¶ 9; Bryan Decl. ¶ 8; Rios Decl. ¶ 11; Abbadessa Decl. ¶ 10; Gilmore Decl. ¶ 12.)

**E.    Team Members are Notified About Changes in Their Time Records**

18.    Whenever any correction is made to a team member's time record, jTime automatically sends the team member a message that directs them to "See Kiosk." This alerts the team member that a change has been made to her time record so she can review the change at the on-line "Associate Kiosk" available through the Company's intranet, known as "jWeb."  The team member will see this message the very next time she clocks "in" or "out," because whenever an employee uses jTime to clock "in" or "out," the alert appears.  (Forest Dep. Tr. 103:11-25; 104:1-23; 131:8-22; Terrana Dep. Tr. 60:14-25; 61-20; Monahan Dep. Tr. 71:21-24; Nasaire Decl. ¶ 10; Jones Decl. ¶ 10; McDonnell Decl. ¶ 8; Bryan Decl. ¶ 10; Rios Decl. ¶ 12; Abbadessa Decl. ¶ 11; Gilmore Decl. ¶ 14.)

19.    jcpenney team members can check their time records at any time.  They can go into jTime through their Kiosks, key in their team member numbers and passwords and review their actual time punches for the pay period.  (Jones Decl. ¶ 15; Bryan Decl. ¶ 12; Rios Decl. ¶ 14.)

**F.    Plaintiffs' Employment History with jcpenney**

20.    Plaintiffs were all formerly employed by jcpenney in its Staten Island store located at 140 Marsh Avenue, Staten Island, New York.  All were paid on an hourly basis and eligible for overtime when and if they worked more than forty (40) hours in a week. (First Amended Compl. ¶¶ 7, 8, 9, 10; Anjum Decl. ¶¶ 2, 4, 5; Terrana Decl. ¶¶ 2, 4, 5; Monahan Decl. ¶¶ 2, 3, 5; Forest Decl. ¶¶ 2, 4, 5.)

21.    jcpenney employed Anjum as a full-time Customer Service Associate in the Men's Department of the Staten Island Store from September 13, 2003 until

November 8, 2012. (Anjum Dep. Tr. 60:7-10; 611:2-6; Anjum Decl. ¶ 2.)  As a Customer Service Associate, Anjum performed cashiering duties, handled returns and adjustments, assisted in stock replenishment and stock counts as necessary, straightened merchandise, and assured a neat and orderly shopping environment, among other things.  Her supervisors at relevant times were Francis Agbanobi and Alie Nasaire (Anjum Dep. Tr. 60:7-25; 61-1-25; 62:1-9; Nasaire Decl. ¶ 13.)

22.    jcpenney employed Forest as a part-time Catalog Sales Assistant in the Catalog Department of the Staten Island Store from November, 2007 until May 2012. (Forest Dep. Tr. 21-25; 94:19-25; 98:10-13.)  She placed catalog orders, assisted customers in locating wanted items on jcp.com/catalog, assisted customers with reorders, returns, order pick-up, exchanges or other adjustments for jcp.com/catalog merchandise as well as retail sales, returns, exchanges and credit payments. Her supervisor was Sandy Mastropiero Stout (Forest Dep. Tr. 95:14-25; 96:1-13; Nasaire Decl. ¶ 18.)

23.    jcpenney employed Monahan as a temporary part-time Customer Service Associate in the Staten Island Store from November 2011 until December 2011. Monahan was responsible for cashiering duties, handling returns and adjustments, assisting in stock replenishment and stock counts as necessary, straightening merchandise, and assuring a neat and orderly shopping environment, among other things.  Her supervisor was Alie Nasaire.  (Monahan Dep. Tr.19:18-25; 20:1-25; 21:1-3; 27:7-25; 28:1-5; 29:19-25; 30:1-10; Nasaire Decl. ¶ 21.)

24.    jcpenney employed Terrana as a part-time Catalog Sales Assistant in the Catalog Department of the Staten Island Store from October 2007 until October 2012.

She placed catalog orders, assisted customers in locating wanted items on jcp.com/catalog, and assisted customers with reorders, returns, order pick-up, exchanges or other adjustments for jcp.com/catalog merchandise as well as retail sales, returns, exchanges and credit payments.  Her supervisors were Sandy Mastropiero Stout and Alie Nasaire.  (Forrest Dep. Tr. 41:3-25; 42:1-25; Nasaire Decl. ¶ 15.)

**G.    Plaintiffs' Cannot Show that jcpenney Deprived Them of Compensation**

25.    Plaintiffs' primary allegations involving time-clock auto-rounding down and automatic meal deductions are completely baseless and easily proven to be untrue. Indeed, Plaintiffs have absolutely no evidence that jcpenney engaged in these practices. Nor can they establish that jcpenney made them work "off the clock" or deprived them of either straight time or overtime.

26.    Anjum alleges that she "regularly performed uncompensated work under 40 hours per week payable at straight wages, as well as performed uncompensated overtime work related duties in excess of 40 hours per week," "was not paid for the many uncompensated straight and overtime hours [she] worked," and "work[ed] through part or all of my automatically deducted and uncompensated meal breaks." (Anjum Decl. ¶¶ 3, 4, 6.)  Anjum's deposition testimony fatally undermined these conclusory allegations. Under oath, she admitted that she did not know anything about how the jcpenney timekeeping system works and was never told not to clock out for a meal period. She also conceded that, except for her last paycheck, she never examined any of her pay records or time records. (Anjum Dep. Tr. 76:12-14; 90:15-20; 104:2-25; 105:1-25; 106:1-5.)

27.     Forest alleges that she "regularly performed uncompensated work under 40 hours per week . . . payable at straight wages," and "was not paid for the many uncompensated straight hours [she] worked." (Forest Decl. ¶¶ 3, 4.)  At her deposition, however, when asked to review her pay records and explain how, when and where she was deprived of compensation, Forest admitted that she could not explain how she was deprived of compensation.  (Forest Dep. Tr. 136:20-23.)  She admitted that her gross pay was accurate, but suggested that her net pay "[didn't] add up." (Forest Dep. Tr. 138:19-25; 139:1-3.)   While she worked for jcpenney, however, Forest never complained to her employer that her pay was incorrect.  (Forest Dep. Tr. 106:19-25; 107:1-2; 115:13-16; 116:21-25.)

28.     Terrana alleges that she "regularly performed uncompensated work under 40 hours per week . . . payable at straight wages," "was not paid for the many of the uncompensated hours [she] worked," and "was perpetually subjected to jcp's time-rounding policy. (Terrana Decl. ¶¶ 3, 4, 6.) Terrana admitted that she never complained that she was not paid for the work she performed—and for good reason, because, as she testified under oath, she never found a mistake on her paycheck. (Terrana Dep. Tr. 64: 6-14; 72:16-25; 73:1-2.) She further admitted that there were no inaccuracies in her pay records. (Terrana Dep. Tr. 91:9-14.) Although she claims that she worked "off the clock," Terrana admitted that she could not testify as to the days or number of hours she worked or whether the work was before or after her shift.  (Terrana Dep. Tr. 94:17-25; 95:1-3.)

29.     Monahan likewise alleges that she "regularly performed uncompensated work under 40 hours per week . . . payable at straight wages, as well as performed

uncompensated overtime work related duties in excess of 40 hours per week," and "was not paid for the many of the uncompensated straight and overtime hours [she] worked." (Monahan Decl. ¶¶ 3, 4.)  Yet, in her deposition testimony, Monahan, admitting that she "could have been exaggerating," (Monahan Dep. Tr. 74:3-16), conceded that no one ever told her not to clock in for work or not to correct her time if inaccurate.  (Monahan Dep. Tr. 68:6-25; 69:3-5; 76:13-15.)   Although she claimed that she might assist a customer after she clocked out, Monahan acknowledged that she was never instructed not to clock back in. (Monahan Dep. Tr. 70:1-15.)  Remarkably, Monahan recalled that there were times when her manager told her to take her meal period but not clock-out, thus entitling her to pay for time she admittedly did not work.  (Monahan Dep. Tr. 76:24-25; 77:77:1-18.)   As with the others, Monahan has no idea how much compensation jcpenney allegedly owes her. (Monahan Dep. Tr. 97:25; 98:1-9.)

## H.    The Declarations of Plaintiffs' Co-Workers Refute Plaintiffs' Claims

30.    Plaintiffs' allegations of wage and hour violations at Staten Island are seriously undercut by other sales associates who worked with Anjum at the Staten Island store, who supplied declarations stating that: (i) they have never worked through a meal period or before or after a shift without pay; (ii) time has not been automatically deducted from their time records for a meal period; (iii) they have never been asked to work without pay before or after a shift; and (iv) they never observed Anjum working through a meal period.  (O'Brien Decl ¶¶ 1-4; Stachelski Decl. ¶¶ 2, 4, 5, 6; Ritter Decl. ¶¶ 4, 5, 6; Filippazzo Decl. ¶5.[9])

---

[9]  See the declarations of MaryJane O'Brien ("O'Brien Decl."), Donna Ritter ("Ritter Decl "), Vicki Stachelski ("Stachelski Decl."), Mary Filippazzo ("Filippazzo Decl."), Bessa Gashi ("Gashi Decl."), attached as <u>Exhibits 16, 17, 18, 19 and 27</u>, respectively, to the Marcus Declaration.

31.     Similarly, Plaintiffs' supervisor testified that he never asked any of the plaintiffs to work either a meal period or before or after a shift without pay, and that Plaintiffs in fact never did work "off the clock." (Nasaire Decl. ¶¶ 14, 17, 20, 22.)

32.     Plaintiffs claim that numerous former Staten Island associates were also denied overtime and straight time pay.  Anjum identified Thywill Avi, Palas Avi and Christilene Fleming. (Anjum Decl. ¶ 15.)  However, jcpenney has submitted declarations from the jcpenney supervisors who worked with these three associates and assigned them work.  In each case, they testified that they never asked these three employees, none of whom worked with Anjum, to work either a meal period or before or after a shift without pay and that none of these employees ever worked either a meal period or before or after a shift without pay. (Press Decl. ¶ 5; Mendiola Decl. ¶ 2; Lauer Decl. ¶ 3.[10])

33.     Significantly, Plaintiffs claim that Staten Island sales associate Olivia Scott was also denied overtime and straight time pay and worked "off-the-clock."  However, Ms. Scott has submitted a declaration specifically denying that jcpenney made her work "off the clock," or denied her overtime or straight time pay.  In fact, Ms. Scott expressly states that she was never once asked to work through a meal period and knows of no co-worker who was ever asked to do so. Nor has Ms. Scott ever had time automatically deducted for meals. (Scott Decl.¶ ¶ 6-7.[11])

I.      **Plaintiffs' Class Allegations**

34.     Plaintiffs allege a common policy among all jcpenney stores in New York not to compensate sales associates for all straight and overtime hours worked.

---

[10] See the declarations of Suzanne Press ("Press Decl."), Christine Lauer ("Lauer Decl "), and Jannette Mendiola ("Mendiola Decl."), attached as Exhibits 20, 21 and 22, respectively, to the Marcus Declaration.
[11] See the declaration of Olivia Scott ("Scott Decl."), attached as Exhibit 23 to the Marcus Declaration.

Plaintiffs' allegations are made without any supporting testimony from any other putative class member or any documentary evidence showing policies or procedures or that the putative class similarly suffered from the complained of pay practice.

35.     Plaintiffs' declarations are mere "carbon-copies," parroting each other in important respects, undercutting their reliability. Although declaring that "[a]ll of the other full-time Sales Associates I knew at the Defendants' stores were required to work through much, if not all, of their meal breaks," (Anjum Decl. ¶ 7; Terrana Decl. ¶ 8; Monahan Decl. ¶ 7; Forest Decl. ¶ 7), Plaintiffs admitted that in referring to "stores" they were referring only to Staten Island and Manhattan.  (Forrest Dep. Tr. 170:18-25; 171:1-11: Terrana Dep. Tr. 121:110-24; 140:14-16; Monahan Dep. Tr. 88:4-16.)  Of the 35 sales associates Forest identified as being "similarly situated," all but two allegedly worked in Staten Island.  (Forest Dep. 173:12-25; 174:1-25; 176:1-10.)  Declarations aside, Forest and Terrana admitted that the associate identified as having worked at Manhattan never specifically told them that there were automatic meal deductions at the Manhattan store or that she worked "off the clock."  (Forest Dep. Tr. 177:4-7; Terrana Dep. Tr. 120:10-13; 133:19-24.)  Indeed, Terrana was forced to admit that she never even met the Manhattan associate she alleged as having experienced wage and hour issues. (Terrana Dep. Tr. 116: 16-19; 119:5-9.)

36.     Plaintiffs' remaining assertions about jcpenney's wage and hour policies and practices at other stores are based on nothing more than rank speculation and "belief."  (Anjum Decl. ¶ 16; Terrana ¶ 13; Forest Decl. ¶17; Monahan Decl. ¶ 17.)  Further, Plaintiffs' deposition testimony fatally undercuts their "beliefs." In fact Forrest admitted under oath that her "belief" was based on nothing more than alleged

conversations with (mostly unnamed) Staten Island and Manhattan sales associates, while Forest, Terrana, and Anjum further based their "beliefs" on the fact that jcpenney made offers of judgment to the named plaintiffs. (Forest Dep. Tr. 212:19-25; 213: 1-25; 214:1-15; Terrana Dep. Tr. 137: 10-18.)

## **ARGUMENT**

### I.

**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION MUST BE DENIED BECAUSE THE PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THEY ARE SIMILARLY SITUATED TO THE PUTATIVE CLASS.**

The FLSA authorizes a plaintiff to file suit on behalf of "other employees similarly situated," but only if such employees "consent in writing." 29 U.S.C. § 216(b).  Hence, putative class members must "opt-in" to participate in an FLSA collective action.  However, the FLSA does not guarantee the initiating plaintiff a right to obtain Court-ordered notice to potential opt-ins.   Rather, "district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] ... by facilitating notice" – they "are not required to do so by [the] FLSA." Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010).  In determining whether to exercise this discretion, a district court can consider whether facilitating notice "may be a useful 'case management' tool," but it is "neither necessary nor sufficient" for maintaining a representative action.  Id. at 555, n.10.

Before a district court will authorize notice, a plaintiff must "make a 'modest factual showing' that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.'"  Id. at 555.  "While [p]laintiff's burden of proof is low, it is not non-existent – certification is not automatic." Romero v. HB. Auto. Grp., Inc., No. 11-cv-386, 2012 WL 1514810 (S.D.N.Y. May 1, 2012).  To make this

showing, "plaintiffs can rely on the pleadings, but only as supplemented by other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members." Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010).  "Furthermore, the plaintiffs' supporting allegations must be specific, not conclusory." Id.  Conditional certification is not a license to conduct "a frivolous fishing expedition" for potential plaintiffs. Prizmic v. Armour, Inc., No. 05-cv-2503, 2006 WL 1662614 (E.D.N.Y. Jun. 12, 2006). "A plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated." Id.

**A.    Plaintiffs Have Not Met Even Their Lenient Burden of Establishing that They Are Similarly Situated to Anyone.**

Plaintiffs' efforts to demonstrate that they are similarly situated to other sales associates outside of the Staten Island store fail.  Defendants submitted evidence in the form of declarations, documentary evidence and sworn deposition testimony showing that jcpenney did not automatically deduct time for meal periods, require associates to perform work without pay or unlawfully round time in Staten Island or anywhere else. As established in Plaintiffs' deposition testimony, however, they have nothing more than their "belief" that non-exempt employees at Staten Island or any other store did not receive overtime or straight time compensation. Plaintiffs proffered no declarations from any putative class member. Instead, Plaintiffs' deposition testimony powerfully demonstrates that their "evidence" consists of nothing more than gross generalizations, double hearsay, unattributed statements, and even outright fabrication. Plaintiffs' unsupported allegations must be disregarded by the Court. Fed. R. Evid. 602, 802; Morales v. Plantworks, Inc., No. 05-cv-2349, 2006 WL 278154 (S.D.N.Y. Feb. 1, 2006) (conclusory allegations "offered nothing of evidentiary value," and were insufficient to

-19-

show others were similarly situated); <u>Laroque v. Domino's Pizza, LLC.</u>, 557 F. Supp. 2d 346, 355-56 (E.D.N.Y. 2008) (plaintiffs' factual support was reduced to hearsay and generalized statements, making class treatment as to five Brooklyn stores unwarranted); <u>Eng-Hatcher v. Sprint Nextel Corp.</u>, No. 07-cv-7350, 2009 WL 7311383 at *3 (S.D.N.Y. Nov. 13, 2009) (discounting "general statements" to support claim that other employees were similarly situated to the plaintiff).

**B.  The Record Is Devoid of a Factual Nexus Linking Plaintiffs' Claims to the Putative Class.**

"It is axiomatic that, even at this preliminary stage, the Court must find some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular practice." <u>Jenkins v. TJX Companies, Inc.</u>, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012). Notice must be premised upon a "factual nexus" between Plaintiffs and their proposed "potential plaintiffs," that is "sufficient to demonstrate that [they] together were victims of a common policy or plan that violated the law[.]" <u>Diaz v. Electronics Boutique of America, Inc.</u>, No. 04-cv-0840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005); <u>Guillen v. Marshalls of MA, Inc.</u>, No. 09-cv-9575, 2012 WL 2588771 (S.D.N.Y. July 2,2012) ("[P]laintiff must nonetheless allege some identifiable factual nexus which binds the name plaintiffs and potential class members together as victims of a particular practice."); <u>Gjurovich v. Emmanuel's Marketplace, Inc.</u>, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) ("actions challenged by plaintiffs" must "reflect a company-wide policy").

In this case, there is no reliable evidence, hearsay or otherwise, that **any** jcpenney store, be it Staten Island or any other store, is implicated in an alleged plan or policy to violate the law. First, Plaintiffs admitted in their depositions that they **could not**

**identify *anything* wrong with their own compensation**. Anjum admitted that she did not know anything about how the jcpenney timekeeping system works, was never told not to clock out for a meal period and conceded that, except for her last paycheck, she never examined any of her pay records or time records.  Terrana admitted that she never found a mistake on her paycheck.  Forest admitted that she could not explain how, when and where she was deprived of compensation; she thought her gross pay was accurate but suggested that her net pay "[didn't] add up."  Similarly, Anjum and Terrana admitted under oath that no supervisor ever told them that, if they worked during a meal period, they should not clock in and would not get paid for the time she worked.   The truth is, these facts would not survive a motion to dismiss, let alone compel the conditional certification of a class. Dejesus v. HF Management Services, No. 12-4565, 2013 U.S. App. LEXIS 16105 (2d Cir. Aug. 5, 2013) *affirming* No. 12-cv-1298, 2012 U.S. 13 Dist. LEXIS 152263 (E.D.N.Y. Oct. 23, 2012); Nakahata v. New York-Presbyterian Healthcare System, Inc., No. 11-0734, 2013 WL 3743152, *4-*6, 8 2013 U.S. App. LEXIS 14128, *15-*21 (2d Cir. July 11, 2013); Lundy v. Catholic Health System of Long Island, 711 F.3d 106 (2d Cir. 2013).

Second, while it is true that Plaintiffs need not submit evidence implicating every store but may instead introduce representative evidence, the sample must be reasonably adequate. Ahmed v. TJ Maxx, No. 10-cv-609, 2013 WL 2649544 at *13 (E.D.N.Y. June 8, 2013)("The Court simply cannot presume the existence of a *de facto* illegal policy common to all Assistant Store Managers in more than 4000 stores across the entire nation based only on allegations from three Assistant Store Managers working in merely a handful of stores in the tri-state area and in Arkansas."); Myers v.

-21-

Hertz Corp., No. 02-cv-4325, 2007 WL 2126264, **5-6 (E.D.N.Y. 2007) (evidence of common policies insufficient where testifying plaintiffs all worked at the same location out of defendant's sixty locations in the state); Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009) (conditional certification partially denied; testimony provided only from one group of employees could not be shown to reflect the realities of all hourly employees); Hamelin v. Faxton-St. Luke's Healthcare, No. 08-cv-1219; 2009 WL 211512 (N.D.N.Y. 2009) (same), and Fengler v. Crouse Health Foundation, Inc., 595 F. Supp. 2d 189 (N.D.N.Y. 2009) (same).

Here, Plaintiffs have produced no reliable evidence that jcpenney's alleged violations occurred anywhere, let alone Staten Island. Aside from their "belief," there is no factual nexus identified by Plaintiffs for their assertion that a common scheme connects all other retail stores in New York. With the exception of one person whom they say worked at jcpenney's Manhattan store (Elizabeth Lechner), every other person whom the Plaintiffs allege to be "similarly situated" is from Staten Island. However, under oath, Plaintiffs admitted that Lechner never specifically told them that there were automatic meal deductions at the Manhattan store or that she worked "off the clock." (Terrana Dep. Tr. 116: 16-19; 119:5-9.)

The consent forms Plaintiffs improperly filed after filing their Motion[12] are irrelevant.  All but 14 of the purported "opt-in" individuals fail to identify themselves as current or former employees, and none of them identify where they worked.  This is not evidence that satisfies even the minimal standard for conditional certification.  Two recently-issued decisions drive home this point.  In Mohamed M. Ali v. New York City Health and Hospitals Corporation, No. 11-cv-6393, 2013 WL 1245543 (S.D.N.Y. March

---

[12] See Section II, infra.

27, 2013), the district court denied the plaintiff's motion for conditional certification, where, as here, he failed to identify who these people were, where they allegedly worked and why they worked more than 40 hours:

> The sole basis for this belief is that Plaintiff 'had conversations with other respiratory therapists about the fact that we worked in excess of forty hours a week.' Plaintiff does not provide any information about where these respiratory therapists worked or, more importantly, why they worked more than forty hours (i.e., because of a common plan or policy of Defendants).

Id. at *3.

In Ikikhueme v. Culinart, Inc., No. 13 Civ. 00293, 2013 WL 2395020 (S.D.N.Y. June 3, 2013), the district court denied the plaintiff's motion for conditional certification where plaintiff's claim that he and other *sous* chefs at other locations were similarly situated was based on his "understanding" – without any other reliable corroboration. Id. at *2. In rejecting plaintiff's declaration (the only declaration submitted), the district court ruled: "[t]his is exactly the type of 'unsupported assertion[ ]' that, according to the Second Circuit, 'cannot . . . satisf[y]' a plaintiff's burden at the preliminary certification stage. Myers, 624 F. 3d at 555 (internal quotation marks omitted)." Id. *See also* Eng-Hatcher, 2009 WL 7311383 at *3 (conditional certification denied where plaintiff provided no details about alleged conversations with other putative class members and provided no affidavits from any other employees corroborating her claims); Barfield v. N.Y. City Health and Hospital Corp., No. 05 Civ. 6319, 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying conditional certification where the plaintiff alleged, based only on "limited anecdotal hearsay," that other nurses were not paid overtime); Levinson v. Primedia, Inc., No. 02 Civ. 2222, 2003 WL 22533428, at *2 (S.D.N.Y. Nov.

6, 2003)(denying conditional certification where plaintiffs provided no factual evidence other than the conjecture contained in the plaintiffs' affidavits that other employees were subjected to the same pay practices).

Plaintiffs' reliance on Summa v. Hofstra Univ., 715 F. Supp. 2d 378 (E.D.N.Y. 2010), for the proposition that unreliable hearsay satisfies their burden, is misplaced. In Summa, the district court granted conditional certification based upon several declarations containing the assertions of other putative class members because they were **specifically named** in the declarations. According to Judge Hurley, "Courts regularly grant motions for approval of a collective action 'based upon affidavits . . . **identifying by name** similarly situated employees.'" Id. at 386, n.6 (emphasis added). See also Cano v. Four M. Food Corp., No. 08-cv-3005, 2009 WL 5710143, at *5 (E.D.N.Y. Feb. 3, 2009) (affidavits of named plaintiffs specifically identified by name other putative class members); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp 2d. at 104 (hearsay acceptable because plaintiff **identified by name** numerous current or former employees who held the same or similar positions). In this case, however, Plaintiffs have failed to specifically identify any current or former sales associate at any store other than Staten Island who allegedly was the victim of some common policy or scheme to deprive them of their compensation.

In sum, the scope of any class, if one is to be conditionally certified, should be limited to the Staten Island store. To the extent Plaintiffs' evidence is to be given any credence at all, it relates only to practices at that store. Moreover, as was made clear by Plaintiffs in their depositions, even within Staten Island, different supervisors may have had different practices, and the only true common practice alleged, auto-rounding by the

-24-

time clock, does not violate the law. Their evidence of jcpenney's practices at any of its other stores is ephemeral, at best. In <u>Hamelin</u>, the court limited the scope of the class to those where the specific affiants worked and had personal knowledge, because there were no affidavits provided by employees at other facilities with first-hand allegations of wage and hour violations at those other facilities. 2009 WL 211512 at *8. As Plaintiffs' proof suffers from the same infirmity, any class should be similarly limited in scope.

II.

**THE CONSENT FORMS FILED BY PLAINTIFFS SHOULD BE STRICKEN.**

The 40 "consent forms" that Plaintiffs filed after filing their Motion cannot sustain their fatally flawed motion and should be stricken. *First*, the forms provide no evidence that anyone is similarly situated to the Plaintiffs. All but 14 forms fail to identify the signatory as a current or former jcpenney employee or to state any allegation that the signatory was not compensated for all hours worked, and **none** of them identify where the signatory worked.[13] At the very least, the persons who signed these consents cannot be "similarly situated" to Plaintiffs if they were not jcpenney employees who worked in New York State.

*Second*, the premature filing of these forms is irrelevant. Before anyone signed a purported consent form, the named plaintiffs had been offered all the relief to which they are entitled;[14] with their cases being thus mooted, the Plaintiffs' Motion cannot proceed. Besides, the persons signing the consent forms have no status in this case. They are not plaintiffs until such time as this Court certifies the collective action and proper notice

---

[13] A consent form filed with this Court on June 20, 2013 is attached as <u>Exhibit 24</u> to the Marcus Declaration.

[14] jcpenney served its offers of judgment on Plaintiffs on May 13, 2013. The offers included all categories of damages to which the plaintiffs might possibly be entitled to under the FLSA, including unpaid overtime compensation, liquidated damages, costs, and reasonable attorneys' fees. True and authentic copies of cover letters enclosing the Offers of Judgment are collectively attached as <u>Exhibit 25</u> to the Marcus Declaration. The first consent form was filed on June 20, 2013 [ECF Doc. 25.]

-25-

is issued. <u>Genesis Healthcare Corp. v. Symczyk</u>, 133 S. Ct. 1523, 1530 (2013); <u>Beery v.</u>

<u>Quest Diagnostics, Inc.</u>, No. 12-cv-00231, 2013 U.S. Dist. LEXIS 95096 at *8 (D.N.J.

July 8, 2013).

*Third*, even if the forms were sufficient, and even if the so-called opt-ins have

status in this case, the forms should be ignored or stricken because they were

improperly obtained. The collective action notice is the appropriate method of

communication, because other methods of communication (for example, phone calls or

emails) might not be fair and neutral as they are not authorized or monitored by the

Court. *See*, *e.g.*, <u>Woods v. New York Life Ins. Co.</u>, 686 F.2d 578, 580 (7th Cir. 1982),

wherein the Seventh Circuit in this FLSA collective action stated:

> Before this suit was filed, Woods [the plaintiff] had sent invitations
> to other members of the class to join with him, and New York Life
> does not challenge his right to do this. After suit was filed,
> however, we do not think it would have been proper for Woods or
> his counsel to have sent out such invitations without first
> communicating to the defendant's counsel his intention to do so,
> so that the defendant's counsel would have an opportunity to
> verify the accuracy of the notice and, if he wished, to move for an
> order amending the notice or limiting its distribution in an
> appropriate manner. … Once a section 16(b) action is
> commenced, the defendant has a vital interest in, and the court a
> managerial responsibility regarding, the joinder of additional
> parties plaintiff, and these concerns support the modest duty and
> power that we infer.

<u>Id.</u> at 580. *See also* <u>Soler v. G & U, Inc.</u>, 568 F. Supp. 313 (S.D.N.Y. 1983) (court

prohibited named plaintiffs from issuing notices and consent forms to putative plaintiffs

prior to certification). In fact, Plaintiffs' counsel owes a fiduciary duty to putative class

members even prior to class certification:

> [P]re-certification class counsel owe a fiduciary duty not to
> prejudice the interests that putative class members have in their
> class action litigation. These duties arise because class counsel
> acquires certain limited abilities to prejudice the substantive legal

> interests of putative class members even prior to class
> certification. In electing to put themselves forward as class
> counsel, they assume the duty of not harming those rights.

Schick v. Berg, No. 03-5513, 2004 U.S. Dist. LEXIS 6842, at *18 (S.D.N.Y. Apr. 20,

2004). *See* Jones v. Casey's Gen. Stores, 517 F. Supp. 2d 1080, 1087-89 (S.D. Iowa

2007) (finding that pre-certification website contained misleading information that if

permitted to continue would taint the entire putative class). Moreover, if there is a record

of abuse or misleading statements, the court should act to correct it. Ruggles v.

Wellpoint Inc., 591 F. Supp. 2d 150, 163-64 (N.D.N.Y. 2008).  The court in Ruggles

limited a plaintiff's pre-conditional certification communication with the potential class

because there could be "conflict between the court-authorized notice and those

communications made by counsel to potential plaintiffs." Id. at 163-64.  The court also

reasoned that plaintiff's prior communications, if left alone, could give rise to abuse and

confusion.  The court explained:

> Failure to limit notification to a single process would be
> dissonant with the intent of the FLSA statute that the Court
> play a significant role in prescribing the terms and conditions
> of communications from the named plaintiffs to the potential
> members of the class on whose behalf the collective action
> was commenced. By exercising the duty imposed by the
> FLSA statute as consistently construed by court precedent,
> and the broad authority granted to exercise control, we will
> enter an order governing the conduct of all parties, fashion a
> reasonable notice, and prevent the potential for deception
> and confusion.

Id. (*citing* Gulf Oil v. Bernard, 452 U.S. at 100). In sum, notice should not issue unless

the court conditionally certifies the case as a collective action.  Gonzalez v. Ridgewood

Landscaping, Inc., Civil Action No. H-09-2992, 2010 U.S. Dist. LEXIS 45245 (S.D. Tex.

May 10, 2010).

-27-

Here, Plaintiffs testified in their depositions that they personally obtained consent forms *ex parte* before the Court conditionally certified a class or authorized notice. Although Plaintiffs' motion for conditional certification contained a proposed notice (itself misleading[15]), Plaintiffs did not even use that. Instead, they verbally solicited the consent forms on street corners, in cars and homes, by telephone, email and text message. (Forest Dep. Tr. 35:11-25 to 89:1-25; Terrana Dep. Tr. 18:20 to 21:18 and 146:1 to 149:17; Anjum Dep Tr. 16:13 to 44:23; 46:23 to 47:9; 50:12 to 53:9.) According to Anjum, signed forms were sent to Terrana, who would then fax them to counsel. (Anjum Dep. Tr. 50:12-25; 51:1-8.)   A posting on Plaintiffs' counsel's website[16] is also misleading, since among other things it fails to set out the responsibilities of putative class members who opt-in to the lawsuit.   *See* Sexton v. Franklin First Financial, Ltd., No. 08-cv-04950, 2009 WL 1706535, *12 (E.D.N.Y. June 16, 2009); *accord*, Hallissey v. America Online, Inc., No. 99 Civ. 3785, 2008 WL 465112, *3 (S.D.N.Y. Feb. 19, 2008).

Courts have explicitly recognized that striking opt-ins before the court's authorization of notice is an appropriate remedy in circumstances where plaintiffs or their counsel embark in direct solicitation efforts to obtain consents without the input or participation of defense counsel or the court.   Partlow v. Jewish Orphans' Home, Inc., 645 F.2d 757, 759 (9th Cir.1981); Chemi v. Champion Mortg., 05-cv-1238, 2006 U.S. Dist. LEXIS 97925 (D.N.J., Feb. 21, 2006); Cintron v. Hershey Puerto Rico, 363 F. Supp. 2d 10 (D.P.R. 2005); Heitmann v. City of Chicago, No. 4-C-3304, 2004 U.S. Dist. LEXIS 14669 (N.D. Ill. July 30, 2004).

---

[15] *See* Section III, *infra*.
[16] A copy of this posting is attached as Exhibit 26 to the Marcus Declaration.

In Cintron, the plaintiff solicited other individuals to join a collective action pursuant to 29 U.S.C. § 216(b) and filed approximately 98 consent to sue forms prior to the court's certification of the class.   The defendant moved to strike the consents because the court had not yet determined whether conditional certification and notice was appropriate.   The court emphasized the basic principle that "[t]he trial court must first authorize whether the alleged class should be provided with notice."   Id. at 17.   As the court observed, "Plaintiffs failed to request authorization from this Court to give notice to the potential class members.   Yet, Plaintiffs have provided notice to the potential opt-in class of employees against established case law precedent of district courts in the First Circuit."   Id.   As a result, the court struck the consents.   *See also* Bouder v. Prudential Fin., Inc., No. 06-CV-4359 (DMC), 007 WL 3396303 (D.N.J. Nov. 8, 2007), and Alaniz v. Sam Kane Beef Processors, Inc., No. CC-07-335, 2007 WL 4290659, at *1 (S.D. Tex. Dec. 4, 2007).

**III.**

**THE SCOPE AND MANNER OF NOTICE, IF CONDITIONAL CERTIFICATION IS APPROPRIATE, SHOULD BE LIMITED AND AMENDED.**

In this case, conditional certification is not appropriate. However, in the unlikely event the Court is inclined to grant Plaintiffs' motion, the scope and manner of the Notice should be amended by: (1) limiting the proposed class to sales associates only in Staten Island, (2) limiting the Notice to cover sales associates only over the last three years; (3) defining the proposed class; (4) deleting references to "straight time," and (5) correcting other flaws.

-29-

A.      **The Court Should Limit Notice to Employees in Staten Island**

Plaintiffs' proposed statewide class of all sales associates is vastly overbroad, as Plaintiffs have failed to provide any evidence of an illegal statewide policy or plan. The Court should instead limit the collective action to sales associates who worked at the Staten Island Store, which is the sole job title and location of which Plaintiffs have any personal knowledge.

B.      **The Court Should Limit Notice to Employees Over the Last Three Years**

Plaintiffs' request that the Court send notice to individuals that worked for jcpenney over the past six years ignores the three-year period that is permitted by Congress in the FLSA itself. *See* Douglas v. Constructamax, Inc., No. 10-cv-5323, 2011 U.S. Dist. LEXIS 48248, at *2-4 (E.D.N.Y. May 5, 2011) (citing Summa, 715 F. Supp. 2d at 387 (rejecting plaintiffs' proposed six-year period and imposing a three-year period for notice). Plaintiffs' request for a six-year Notice period is inappropriate at this stage of the litigation and should only be addressed upon an appropriate motion with evidence to support such drastic relief. *See also*, *e.g.*, Hanchard-James v. Brookdale Family Care Centers, No. 12 Civ.1922, 2012 WL 3288810 (E.D.N.Y. August 9, 2012); Lujan v. Cabana Management, Inc., No.10-cv-755, 2011 WL 317984 (E.D.N.Y. Feb. 1, 2011); Monger v. Cactus Salon & Spa's LLC, No. 08-cv-1817, 2009 WL 1916386 (E.D.N.Y. July 6, 2009); Laroque v. Domino's Pizza, 557 F.Supp.2d 346, 355 (E.D.N.Y. 2008); Sobczak v. AWL Indus., Inc., 540 F.Supp.2d 354, 364 (E.D.N.Y. 2007) (collecting cases). In determining whether a notice should extend three years before the motion for conditional certification is granted, this Court in Lujan noted that:

> the purpose of the instant motion is to notify and inform those
> eligible to opt in to the collective action, and time-barred former

> employees may not do so. This Court sees no purpose in sending
> such employees a notice informing them that (1) there is a
> pending opt-in lawsuit, (2) they may not opt in, and (3) they may
> later receive another notice should their status change due to
> class certification.

Lujan, 2011 WL 317984 at *9. Moreover, the Court in Sobczak explained that the focus

should be on issues related to subject matter jurisdiction if the notice period set forth by

Congress is not applied:

> The longest applicable limitations period to plaintiffs' FLSA claim
> is three years if willful violations are established. 29 U.S.C. §
> 255(a). Thus, any potential plaintiff whose claim is more than
> three years old has a state law claim only. ... In the absence of
> diversity and a claim for damages in excess of $75,000 (which
> seems unlikely), the Court would have no subject matter
> jurisdiction over claims that are more than three years old since
> such claims would be pure state law claims. There is no reason to
> provide an opt-in notice to a plaintiff whose claims could not be
> asserted in this Court.

Id. at 64; see also Hamadou v. Hess Corp., No.12-cv-0250, 2013 WL 164009 (S.D.N.Y.

Jan. 6, 2013) (denying a request for a six-year notice period based on the lack of any

prejudice to the class and the unnecessary confusion it would cause to the class

members).

## C.    The Notice Fails to Define the Class

The proposed Notice does not adequately define any class. In the unlikely event

the Court is inclined to grant Plaintiffs motion for conditional certification, jcpenney

proposes the following definition:

> All current and former sales associates of J.C. Penney Company,
> Inc. ("jcpenney") who were or are employed within the past three
> (3) years, i.e., between January 25, 2010 and January 25, 2013,
> at the jcpenney store located at 140 Marsh Avenue, Staten Island,
> New York, 10314, and who were required to perform unpaid "off-
> the-clock" work, such that they were not paid for all of the hours
> that they worked and/or did not receive overtime compensation at

the rate of one and one-half times the regular rate at which they were paid for hours they worked in excess of forty (40) in one week.

This class description carefully identifies the alleged unlawful activities as well as the associates who make up the putative class.

**D.     References to "Straight Time" Should Be Stricken**

The proposed Notice makes several references to "straight-time pay" (*see, e.g.*, ¶¶ 2, 7). These references should be stricken. Straight time pay is irrelevant in this FLSA action because the FLSA does not recognize a separate claim for "gap time" or straight time pay for unpaid hours worked, *i.e.*, failure to pay meal breaks or pre- or post-shift activity. Lundy v. Catholic Health System of Long Island, 711 F.3d 106 (2d Cir. 2013). Rather, the FLSA recognizes claims only for failure to pay minimum wage – where the total wages for the week, divided by the total hours worked, fail to meet the minimum wage; and failure to pay overtime. Id.

**E.     The Notice Should Contain Notice to Potential Class Members That They Have Monetary and Other Obligations.**

Paragraph 11, titled, "What happens if I join the lawsuit," should be amended to include language that putative class members "may be required to pay costs if they do not prevail." Courts have found that such notification is appropriate. Slamna v. API Rest. Corp., No. 12 Civ. 757, 2013 U.S. Dist. LEXIS 93176 (S.D.N.Y. July 02, 2013); Hallissey v. Am. Online, Inc., No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *4 (S.D. N.Y. Feb. 19, 2008). Additionally, the following language should also be included to notify putative class members "of the possibility that opt-in plaintiffs may be required to provide information, respond to discovery requests, appear for a deposition, and/or testify in court."  This language has also been deemed appropriate. Slamna, 2013 U.S. Dist.

-32-

LEXIS 93176 at *11-12;   Salomon v. Adderley Indus., Inc., 847 F.Supp.2d 561, 566 (S.D. N.Y. 2012); Sexton v. Franklin First Financial, Ltd., No. 08-cv-04950, 2009 WL 1706535, *12 (E.D.N.Y. June 16, 2009); Hallissey, 2008 WL 465112 at *3.

**F.      The Notice Should Identify Defendants' Counsel**

The notice should contain the name, address, and telephone number of Defendants' counsel. Courts in this Circuit have generally concluded that such information is appropriate for inclusion in a notice of collective action. *See* Slamna, 2013 U.S. Dist. LEXIS 93176 at *12; Gjurovich, 282 F. Supp. 2d at 108; Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54 (E.D.N.Y. 2011); Cano v. Four M Food Corp., No. 08 Civ. 3005, 2009 U.S. Dist. LEXIS 7780, 2009 WL 5710143, at *11 (E.D.N.Y. Feb. 3, 2009).

**G.      Consent Forms Should Be Sent to the Clerk of the Court**

Any putative plaintiff choosing to opt-in should be directed to send his or her "Consent to Join" form to the Clerk of Court, rather than to Plaintiffs' counsel because the latter practice implicitly discourages opt-in plaintiffs from selecting other counsel. Courts have found this notice appropriate. Slamna, 2013 U.S. Dist. LEXIS 93176 at *13; Diaz v. S&H Bondi's Dep't Store, Inc., 10 Civ. 7676, 2012 U.S. Dist. LEXIS 5683 at *24 (S.D.N.Y. Jan. 17, 2012); Hallissey, 2008 WL 465112, at *4 (same.)

**H.      The Notice Has Other Important Flaws**

The Notice should be amended further as follows:

*First*, jcpenney's denials of liability should be set forth in the "Introduction" paragraph of the Notice. Including these denials later in the Notice buries them unfairly.

*Second*, Paragraph 2 of the Notice should be revised so that it reads:

> This lawsuit is about whether contains allegations that JCP should have paid Sales Associates straight and overtime

> wages during periods ~~of~~ <u>which the named plaintiffs allege</u> <u>include</u> improper time rounding, off-the clock work, and interrupted meal periods. <u>JCP denies these allegations</u>.

(Requested changes underlined and stricken.) Again, the phrase "straight time" should be stricken because the FLSA does not recognize a claim for "gap pay." Further, as stated above, the Notice should clearly state in the same paragraph that the Plaintiffs' claims are merely allegations and that these allegations are denied. By asserting that these wages were owed "during periods including improper [wage and hour actions]," the Notice suggests that the actions alleged actually occurred.

> *Third*, Paragraph 5 of the Notice should be rewritten so that it reads:

>> <u>JCP maintains that the allegations contained in the named plaintiffs' First Amended Complaint are false, that it does not engage in unlawful time rounding, that it properly compensates its associates for all work performed, both before and after shifts and during meal periods, and that it complies with all state and federal wage and hour laws</u>.

Paragraph 2 of the Notice specifically details the alleged unlawful actions, while the denial in paragraph 5 is general. The amendment makes it vitally clear to anyone who reads the Notice that jcpenney denies the allegations specifically and firmly.

1919127_1

## CONCLUSION

For the foregoing reasons, J.C. Penney Company, Inc., and J.C. Penney Corporation, Inc., respectfully request an Order denying 1) Plaintiffs' motion seeking conditional certification of this matter as a FLSA collective matter, 2) Plaintiffs' request for a Notice of Pendency, and 3) Plaintiffs' request to compel the production of the names, addresses, and telephone numbers of those who are allegedly "similarly situated."


Dated: August 22, 2013                          Respectfully submitted,

                                                **BRESSLER AMERY & ROSS, P.C.**

                                                By:   /s/ Jed Marcus
                                                      Jed L. Marcus (JM 0163)
                                                      Tracey Salmon-Smith (TS 4642)


-35-

1919127_1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, a copy of the foregoing "Memorandum of Law in Support of Defendants' Opposition to Motion to Conditionally Certify a Collective Action Under the FLSA" was served by ECF upon Plaintiffs to their counsel, as follows:

> Lee S. Shalov, Esq.
> McLaughlin & Stern, LLP
> 260 Madison Avenue
> New York, New York 10016
> (212) 448-1100
> lshalov@mclaughlinstern.com
>
> Louis Ginsberg, Esq.
> Law Firm of Louis Ginsberg, P.C.
> 1613 Northern Boulevard
> Roslyn, New York 11576
> (516) 625-0105, ext. 13
> lg@louisginsberglawoffices.com

    /s/  Jed Marcus    
Jed Marcus

Dated: August 22, 2013
      Florham Park, NJ

1919127_1