UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AFZA ANJUM, JANET TERRANA, VERONICA
MONAHAN and CAMILLE FOREST,
on behalf of themselves and all others similarly situated,

                    Plaintiffs,

       v.

J.C. PENNEY COMPANY, INC.,
J.C. PENNEY CORPORATION, INC.,

                    Defendants.

Index No.: 1:13-cv-00460-RJD-RER

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
## MOTION FOR CONDITIONAL CERTIFICATION

Lee S. Shalov, Esq. (LS-7118)
Brett R. Gallaway, Esq. (BG-1056)
Wade C. Wilkinson, Esq. (WW-1679)
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
lshalov@mclaughlinstern.com
bgallaway@mclaughlinstern.com
wwilkinson@mclaughlinstern.com


Louis Ginsberg, Esq. (LG-1048)
Matthew Cohen, Esq. (MC-2595)
LAW FIRM OF LOUIS GINSBERG, P.C.
1613 Northern Blvd.
Roslyn, New York 11576
Telephone: (516) 625-0105
lg@louisginsberglawoffices.com

*Attorneys for Plaintiffs, the FLSA Collective
Class, and the New York Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................i-iii

PRELIMINARY STATEMENT ...................................................................................... 2

ARGUMENT .................................................................................................................... 2

    (A)   Defendants' Illegal Wage Policies.................................................................... 2

        (1) Defendants' Improperly Pay Hourly Employees Who Miss Punches Based
        Upon Their Scheduled Time Rather Than The Actual Time Worked................ 3

        (2) Defendants' Require Hourly Employees To Perform Off-The-Clock Work....... 6

        (3) Defendants' Improperly Round Time in One Direction To The Detriment Of
        Hourly Employees ...................................................................................... 7

        (4) Plaintiffs Have Identified Numerous Other Similarly Situated Hourly
        Employees From Multiple JCP Store Locations Subject To The Same
        Improper Wage And Hour Policies.............................................................. 7

    (B)   Defendants' Attempts To Rebut Plaintiffs' Allegations Must Be Disregarded As
       Factual Issues And Credibility Determinations And The Merits Of Plaintiffs'
       Claims Are Irrelevant In Evaluatin A Motion for Conditional Certification............. 8

        (1) Plaintiffs Have Adequately Satisfied The Minimal 'Factual Nexus'
        Requirement For Purposes of Conditional Certification ...................................... 8

        (2) Plaintiffs' Declaration Adequately Show Enough Cause To Grant
        Conditional Certification .................................................................................. 10

        (3) Plaintiffs Have Demonstrated That They Are Similarly Situated To Other
        JCP Hourly Employees ................................................................................. 13

        (4) Defendants' Competing Declarations Should Not Be Considered At This
        Preliminary Stage.......................................................................................... 14

    (C)   All Opt-In Consent Forms Have Been Properly Filed............................................. 16

    (D)   Plaintiffs' Proposed Notice Is Proper ..................................................................... 16

    CONCLUSION....................................................................................................... 20

TABLE OF AUTHORITIES

FEDERAL STATUTES

29 U.S.C. § 216(b) .................................................................................................... 1,12


FEDERAL RULES

29 C.F.R. § 785.48(b) .................................................................................................. 7


FEDERAL CASES

*Alcantara v. CNA Management, Inc.,*
    264 F.R.D. 61 (S.D.N.Y. 2009) ........................................................................ 17

*Amador v. Morgan Stanley & Co. LLC,*
    2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) ...................................................... 14

*Cano v. Four M Food Corp.,*
    2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) ................................................... 11

*Cohen v. Gerson Lehrman Grp., Inc.,*
    686 F. Supp. 2d 317 (S.D.N.Y. 2010) ............................................................. 15

*Davis v. Abercrombie & Fitch Co.,*
    2008 WL 4702840 (S.D.N.Y. Oct. 23, 2008) ................................................. 15

*Diaz v. Electronics Boutique of America, Inc.,*
    2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) .................................................. 9

*Dominguez v. Don Pedro Restaurant,*
    2007 WL 271567 (N.D. Ind. Jan. 25, 2007) .................................................... 13

*Doucoure v. Matlyn Food, Inc.,*
    554 F. Supp. 2d 369 (E.D.N.Y.2008) .............................................................. 10

*Fasanelli v. Heartland Brewery, Inc.,*
    516 F. Supp. 2d 317 (S.D.N.Y.2007) ............................................................... 14

*Garcia v. Pancho Villa's of Huntington Vill., Inc.,*
    678 F. Supp. 2d 89 (E.D.N.Y. 2010) ................................................ 8,9-10,13,18

*Gjurovich v. Emmanuel's Marketplace, Inc.,*
    282 F. Supp. 2d 101 (S.D.N.Y. 2003) ............................................................. 12

i

*Guillen v. Marshall,*
    2012 WL 2588771 (S.D.N.Y. July 2, 2012) ..................................................... 9

*Guzman v. VLM, Inc.,*
    2007 WL 2994278 (E.D.N.Y. Oct. 11, 2007) ............................................ 17,18

*Harhash v. Infinity West Shoes, Inc.,*
    2011 WL 4001072 (S.D.N.Y. Aug. 25, 2011) ................................................ 13

*Harrington v. Educ. Mgmt. Corp.,*
    2002 WL 1343753 (S.D.N.Y. June 19, 2002) ............................................... 17

*Hoffmann v. Sbarro,*
    982 F. Supp. 249 (S.D.N.Y.1997) ................................................................ 10

*Iglesias-Mendoza v. La Belle Farm, Inc.,*
    239 F.R.D. 363 (S.D.N.Y. 2007) ................................................................. 13

*Jenkins v. TJX Companies, Inc.,*
    853 F. Supp. 2d 317 (E.D.N.Y. 2012) ........................................................... 9

*Jeong Woo Kim v. 511 E. 5th St., LLC,*
    2013 WL 6283587 (S.D.N.Y. Dec. 3, 2013) ............................................ 2,16

*Karic v. Major Auto. Co., Inc.,*
    799 F. Supp. 2d 219 (E.D.N.Y. 2011) ......................................................... 14

*Krueger v. N.Y. Tel. Co.,*
    1993 WL 276058 (S.D.N.Y. 1993) .............................................................. 13

*Lundy v. Catholic Health Systems of Long Island,*
    711 F.3d 106 (2d Cir. 2013) ........................................................................ 17

*Lynch v. United Servs. Auto. Ass'n.,*
    491 F. Supp. 2d 357 (S.D.N.Y. 2007) .................................................... 10,11

*Moore v. Eagle Sanitation, Inc.,*
    276 F.R.D. 54 (E.D.N.Y. 2011) .................................................................. 17

*Pippins v. KPMG LLP,*
    2012 WL 19379 (S.D.N.Y. Jan 3, 2012) ..................................................... 14

*Raniere v. Citigroup Inc.,*
    827 F. Supp. 2d 294 (S.D.N.Y. 2011) ......................................................... 15

*Realite v. Ark Restaurants Corp.,*
    7 F. Supp. 2d 303 (S.D.N.Y. 1998) .......................................................... 8,17

*Rosario v. Valentine Ave. Disc. Store, Co., Inc.,*
    828 F. Supp. 2d 508 (E.D.N.Y. 2011) .................................................. 10,11,13

*Schwerdtfeger v. Demarchelier Mgmt., Inc.,*
    2011 WL 2207517 (S.D.N.Y. June 6, 2011) ............................................ 18,19

*Summa v. Hofstra Univ.,*
    715 F. Supp. 2d 378 (E.D.N.Y. 2010) .......................................................... 12

*Winfield v. Citibank, N.A.,*
    843 F. Supp. 2d 397 (S.D.N.Y. 2012) .................................................... 15,16

*Wraga v. Marble Lite, Inc.,*
    2006 WL 2443554 (E.D.N.Y. Aug. 22, 2006) ........................................... 12,17

*Young v. Cooper Cameron Corp.,*
    229 F.R.D. 50 (S.D.N.Y. 2005) ............................................................. 12-13

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this reply memorandum of law in further support of their motion for collective certification pursuant to § 216 of the Fair Labor Standards Act of 1938 (the "FLSA.")  As demonstrated in Plaintiffs' Opening Brief and more fully below, this action – which challenges a number of facially illegal wage policies Defendants have employed for years – is ideally suited for collective certification under the FLSA.  Moreover, Defendants' opposition fails to establish any set of facts which would prevent conditional certification and ignores the vast majority of case law pertaining to the conditional certification process.   Because the Plaintiffs have established entitlement to conditional certification under 29 U.S.C. § 216(b) and Defendants have failed to submit any valid argument in opposition, we respectfully request that this Court conditionally certify this lawsuit as a collective action.

The essence of Defendants' opposition to certification is that Plaintiffs have "failed to show that they are similarly situated to anyone outside of Staten Island" where the four Plaintiffs all work and "have failed to provide sufficient evidence to establish a factual nexus that can somehow tie their allegations to those of the putative class."[1]   Contrary to Defendants' assertions, Plaintiffs have all testified to the existence of numerous other similarly situated individuals employed in the Staten Island J.C. Penney ("JCP") location and at least two additional JCP locations in New York and have all complained of the same or similar ongoing violations of federal and state labor laws.  All the Plaintiffs and numerous JCP store managers have testified that Defendants utilize a timekeeping system that inappropriately calculates JCP hourly sales associates' ("Hourly Employees") compensation based upon the Hourly Employees' scheduled hours rather than the actual time they have worked, requires employees to work off-

---

[1] *See* Defendants' Memorandum Of Law In Opposition To Plaintiffs' Motion For Conditional Class Certification ("Def. Opp."), pg. 2.

1

the-clock before and after they have clocked in, out or during their uncompensated meal break and improperly rounds time to the benefit of the employer.  These unlawful wage policies readily support a finding that proposed class members are "similarly situated" for purposes of granting collective certification and issuing notice to employees about opting into the litigation and seeking redress under the FLSA.

Defendants have also improperly attempted to use their opposition brief as a second bite at the apple in striking Plaintiffs' properly filed consent forms.  First, Defendants' attempt to strike opt-in consent forms involves a factual dispute, and is thus inappropriate to bring up at the preliminary certification stage.  *See Jeong Woo Kim v. 511 E. 5th St., LLC*, 2013 WL 6283587 (S.D.N.Y. Dec. 3, 2013).  Second, this issue has already been fully briefed by both parties and is currently pending before this Court. *See* Docket Nos. 105-107.

Finally, Defendants ask the Court to adopt a Notice of Pendency that is grossly truncated in both nature and scope and contrary to the well established precedents of this Court.  For these and other reasons discussed more fully below, Plaintiffs respectfully request that their motion for collective certification be granted.

## ARGUMENT

### A. Defendants' Illegal Wage Policies

The record in this case convincingly shows that Defendants have knowingly employed a variety of illegal wage policies to withhold rightfully earned compensation from their hourly paid employees.  Additionally, as argued in Plaintiffs' Opening Brief and confirmed through deposition testimony, these illegal policies uniformly affect all JCP Hourly Employees throughout New York State.

**1. Defendants' Improperly Pay Hourly Employees Who Miss Punches Based Upon Their Scheduled Time Rather Than The Actual Time Worked**

Most notably, Defendants have a policy and practice when an Hourly Employee misses a punch of recording that employees' regularly scheduled shift time rather than the time the employee actually worked. *See* Ex. A;[2] McDonnell Tr. at 32-33, 46;[3] Bryan Tr. at 32, 48, 55, 74, 76-77.[4] The use of schedule based pay is akin to an automatic meal deduction as employees are not properly compensated for the time they actually take off for their meal. JCP uses the same timekeeping system, known as Jtime, to record each employee's time in every JCP retail store location in New York. Drozdowski Tr. at 58.[5] All JCP Hourly Employees are required to clock in at the beginning of their shift, clock out when they leave for lunch, clock in when they return from lunch and clock out at the end of their shift. Anjum Tr. at 82;[6] Forest Tr. at 105-106;[7] Terrana Tr. at 59-60;[8] Monahan Tr. at 105-106.[9] However, often times employees will forget one or more of these daily punches and/or the JCP computer system may malfunction and prevent an employee from clocking in/out. Bryan Tr. at 24-26. Thompson Tr. at 31-35;[10] Forest Tr. at 106-108; Terrana Tr. at 81-82. These missed punches do not occur on a sporadic or rare basis but are routine amongst all JCP New York store locations and happen between 10 – 40

---

[2] All "Ex._" references refer to the exhibits annexed to the Declaration of Wade C. Wilkinson, dated December 19, 2013 (the "Wilkinson Decl.").

[3] A copy of the deposition transcript of Bernice McDonnell ("McDonnell Tr.") is attached to the Wilkinson Decl. as Exhibit B.

[4] A copy of the deposition transcript of Delrose Bryan ("Bryan Tr.") is attached to the Wilkinson Decl. as Exhibit C.

[5] A copy of the deposition transcript of John W. Drozdowski, II ("Drozdowski Tr.") is attached to the Wilkinson Decl. as Exhibit D.

[6] A copy of the deposition transcript of Afza Anjum ("Anjum Tr.") is attached to the Wilkinson Decl. as Exhibit E.

[7] A copy of the deposition transcript of Camille Forest ("Forest Tr.") is attached to the Wilkinson Decl. as Exhibit F.

[8] A copy of the deposition transcript of Janet Terrana ("Terrana Tr.") is attached to the Wilkinson Decl. as Exhibit G.

[9] A copy of the deposition transcript of Veronica Monahan ("Monahan Tr.") is attached to the Wilkinson Decl. as Exhibit H.

[10] A copy of the deposition transcript of Lisa Thompson ("Thompson Tr.") is attached to the Wilkinson Decl. as Exhibit I.

times every day in each store.  Rios Tr. at 25 (42 employees per day); [11] McDonnell Tr. at 36-38 (25-35 employees per day).

When an employee misses a punch they are supposed to fill out a "manual time sheet" to record the exact time of the missed punch.  McDonnell Tr. at 21-22; Rios Tr. at 27; Bryan Tr. at 20-21; Drozdowski Tr. at 76-77; Anjum Tr. at 82, 84; Forest Tr. at 106-108; Monahan Tr. at 41. However, JCP Hourly Employees regularly forget or are prevented from filling out manual time sheets because they are not readily available and often hidden from employees and/or locked in a supervisor's office.  *See* Bryan Tr. at 27-28, 60-62 (only 20% of the Hourly Employees who miss a punch fill out manual time sheets and the sheets are kept in a "drawer in the desk" that many employees don't know about or have access to); McDonnell Tr. at 42, 49-50 (On an average day, only 2-3 of the 25-35 Hourly Employees who missed punches would use manual time sheets and the manual time sheets are kept "in a desk drawer" and the employees are not allowed to "sign the manual time sheet without a supervisor or manager authorizing them to.") Additionally, multiple JCP supervisors from various JCP New York retail locations testified that if an employee forgets or is otherwise prevented from filling out a manual time sheet, the burden is then put on that employee to make sure they are paid appropriately for their time or else their scheduled hours will be used to reconcile a missed punch.  *Id*. at 49-50; Bryan Tr. at 32.

Using schedule based time rather than the Hourly Employees' actual time is not only in practice amongst the various JCP New York retail store locations, it is also JCP's written policy in the Jtime Time Attendance Commission Guide ("Jtime TAC Guide") which is used to train all of JCP's timekeeping supervisors known as Office Specialists, about how to operate the Jtime system.  *See* Wilkinson Decl. Ex. A; Thompson Tr. at 61-62; Bryan Tr. at 66-67.  In the Jtime

---

[11] A copy of the deposition transcript of Benita Rios ("Rios Tr.") is attached to the Wilkinson Decl. as Exhibit J.

TAC Guide, under the heading of "[] Best Practices for Timesheets" there are specific instructions as to how the Office Specialist should deal with missed punches:

> **[1306]** On rare occasion all or most associates are missing punches on the timesheet. In this case, contact technical services at 1-800-214-4822 an open an AR for missing punches
>
> **[1307]** If there is a punch missing, make a best estimate of when the Associate should have recorded their time
>
> **[1308]** If the Start Shift and/or End Shift punch is missing, use the Start and End scheduled time. This can be viewed under Shift Column from the front of the Timesheet
>
> **[1309]** When there is a Meal punch missing, use the length of the meal for which the associate was scheduled.

Wilkinson Decl. Ex. A, Section 1300, pg. 2.

Bernice McDonnell, an Office Specialist at JCP's Garden City, New York store location testified that the "best estimate" she would make as instructed in [1307] from the Jtime TAC Guide was made by inputting an employee's scheduled time if a punch was missing. McDonnell Tr. at 46. Furthermore, Delrose Bryan, an Office Specialist at JCP's Bronx, New York store location testified that Office Specialists at all other JCP store locations also use an employee's scheduled time if a punch is missing as instructed by the Jtime TAC Guide. Bryan Tr. At 66. Thus, if an employee misses a punch (which they often do) JCP's timekeeping system imposes upon them an affirmative obligation to seek out a manager and fill out a manual time sheet which is often hidden in desk drawers behind locked office doors which are off-limits to JCP employees. *See* Rios Tr. at 44; Forest Tr. at 184 ("those were not always available" referring to manual time sheets); Bryan Tr. at 60-62; McDonnell Tr. at 49-50. Thus, the large majority of the time, JCP simply records an employee's scheduled time when they have missed punches, thereby creating inaccurate time records and an improperly compensated workforce.

5

## 2. **Defendants' Require Hourly Employees To Perform Off-The-Clock Work**

As demonstrated in Plaintiffs' Opening Brief, JCP Hourly Employees regularly work before and after their shifts end as well as during lunch without getting paid. *See* Plaintiffs' Opening Brief, pgs. 2, 4, 8-9. This off-the-clock work is performed at the request of the Hourly Employee's supervisor and as such is a practice that is known to and willingly required by Defendants. Hourly Employees are often stopped by customers and/or managers and asked to perform work related duties prior to clocking in, after clocking out and/or during their uncompensated meal breaks. Forest Tr. at 30, 190, 194 (required to help customers with various business related activities as well as answer and direct phone calls while off-the-clock); Monaghan Tr. at 55, 57-61, 71-72, 88-89, 126 ("managers...would [] grab me before my shift, tell me not to clock in yet, they needed me for something or they needed to speak to me for something. They would actually say don't clock in yet with their own very words...")[12] If an employee ever tried to clock back in prior to performing the requested and required off-the-clock work they would be reprimanded by JCP's supervisors who would force employees to review company policy and train on new devices while off-the-clock. Monaghan Tr. 88-91. As demonstrated in Plaintiffs' Declarations accompanying Plaintiffs' Opening Brief, as well as the opt-in plaintiff declarations accompanying Plaintiffs' Opposition to Defendants' Motion To Strike Putative Opt-In Plaintiffs ("Plaintiffs' Opp."), this frequently occurs at JCP as Hourly Employees are repeatedly required to work during meals as well as before and after scheduled shifts[13].

---

[12] Additionally, JCP supervisors specifically instructed Hourly Employees that they could not "say no to customers, even if we were on break." Forrest Tr. at 30. Plaintiff Camille Forest testified that she could recall at least 8 supervisors by name and Plaintiff Veronica Monaghan named at least 4 supervisors that required them to perform off-the-clock work. *Id.* at 145, 177; Monaghan Tr. at 56-57.

[13] The opt-in plaintiff declarations submitted in support of Plaintiffs' Opposition To Defendants' Motion To Strike Putative Opt-In Plaintiffs are attached to the Wilkinson Decl. as Exhibit K.

### 3.  Defendants' Improperly Round Time In One Direction
### To The Detriment Of Hourly Employees

Additionally, the Plaintiffs and some of JCP's own Office Specialists testified about JCP's time clocks rounding Hourly Employees' clock in and out time(s) only in one direction to the benefit of the employer and detriment of the employee in violation of 29 C.F.R. § 785.48(b). Forest Tr. at 101 (JCP time clocks are "set up in a way that if you as the associate know you clocked in at a certain time it would show you a later time than what you know you've clocked in at.")  Additionally and in opposition to Defendants' premature factual assertions regarding time rounding, multiple Plaintiffs' testified that the clock rounding would only occur in one direction. Forest Tr. at 199-202; Monahan Tr. at 94; Terrana Tr. at 102-106.  Complaints regarding unfair and improper time rounding have not been isolated to just the JCP Staten Island retail store location but have been widespread amongst all JCP Hourly Employees in New York. Forest Tr. at 202 (multiple people in JCP's Staten Island, New York location noticed rounding); McDonnell Tr. at 54 (Office Specialist from JCP's Garden City, New York location received 20 complaints about unfair time rounding); Bryan Tr. at 95-99 (Office Specialist from JCP's Bronx, New York location testified that rounding occurs in one direction to the detriment of the employee).

### 4.  Plaintiffs Have Identified Numerous Other Similarly Situated
### Hourly Employees From Multiple JCP Store Locations
### Subject To The Same Improper Wage And Hour Policies

Defendants base their main argument against conditional certification on the misplaced belief that "Plaintiffs are not similarly situated to *anyone* outside of Staten Island with respect to their claims that they were improperly compensated." \ Def. Opp. Pg. 2 (emphasis in original). In fact, Defendant's falsely claim, "with the exception of one person whom they say worked at jcpenney's Manhattan store (Elizabeth Lechner), every other person whom the Plaintiffs allege

to be "similarly situated" is from Staten Island. *Id.* at 22. This assertion is contrary to the testimony given during Plaintiff Camille Forest's as well as Plaintiff Veronica Monahan's depositions.[14] In addition to the numerous individuals identified from outside the Staten Island, New York location, 5 additional opt-in plaintiffs submitted declarations in support of Plaintiffs' Opp., all of which allege similar violations of the FLSA. *See* Wilkinson Decl. Ex. K. Furthermore, to date 52 opt-in plaintiffs, in addition to the Plaintiffs, have filed consent forms and elected to participate in this lawsuit. Docket Nos. 25-29, 31-32, 33-36, 39-72, 74-80. Finally, JCP's own Office Specialists, Staten Island Store Manager and Senior Director of Human Resources all have acknowledged that JCP universally uses the Jtime system, thus subjecting each Hourly Employee in New York State to the same or similar unlawful pay practices. Drozdowski Tr. at 58.

**B. Defendants' Attempts To Rebut Plaintiffs' Allegations Must Be Disregarded As Factual Issues And Credibility Determinations And The Merits Of Plaintiffs' Claims Are Irrelevant In Evaluating A Motion for Conditional Certification**

**1. Plaintiffs Have Adequately Satisfied The Minimal 'Factual Nexus' Requirement For Purposes of Conditional Certification**

A plaintiff is not required to show "an actual FLSA violation" at this stage, but rather only that "a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 92 (E.D.N.Y. 2010). Pleadings and affidavits alone are enough to establish a "factual nexus" between plaintiffs and similarly situated employees and allow the court to grant conditional certification. *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998).

---

[14] Specifically, Ms. Forest identified 4 Hourly Employees (Elizabeth Lechner, Jason [last name unknown], Natalie [last name unknown], Grisele [last name unknown]) from the Manhattan, New York location who confirmed similar violations. Forest Tr. at 7-19, 28-30, 38, 60-61, 81. Additionally, Ms. Monahan spoke with 3-4 Hourly Employees from the Woodbridge, New York location who confirmed similar violations. Monahan Tr. at 10-11, 16, 92.

Defendants cite several criticized decisions in a feeble attempt to bolster the proposition that Plaintiffs have failed to satisfy the minimal 'factual nexus' requirement for preliminary certification.  Defendants cite to *Jenkins v. TJX Companies, Inc.*, 853 F. Supp. 2d 317 (E.D.N.Y. 2012), *Diaz v. Electronics Boutique of America, Inc.*, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) and *Guillen v. Marshall,* 2012 WL 2588771 (S.D.N.Y. July 2, 2012) to support this assertion. However, upon a closer reading of all these decisions, which all involve misclassification claims rather than the claims asserted in this case, it is clear that Plaintiffs' overwhelming identification of similarly situated individuals by name at the Staten Island location as well as other New York JCP locations in addition to identifying numerous common unlawful pay practices differentiates this case from those cited to by the Defendants.  In Defendants' cases, the claims involved a nationwide class, in which either the plaintiff submitted only his own sole unsubstantiated deposition and declaration (*Jenkins*); involved two plaintiffs with competing and dissimilar claims (*Diaz*); or involved only a handful of affidavits recounting individual incidents and not identifying any other individuals or common policy (*Guillen*). Here, Plaintiffs have submitted 9 declarations (4 from Plaintiffs in Plaintiffs' Opening Brief and 5 from opt-in Plaintiffs in Plaintiffs' Opp.) all of which identify numerous employees from the Staten Island store as well as from the Manhattan store and also allege the same common violations. *See* Docket No. 19; Wilkinson Decl. Ex. K.  Additionally, as noted *supra*, since the filing of this lawsuit, 52 additional opt-in plaintiffs who believe they have been subject to the same or similar wage and hour violations have filed consent forms with this Court.

In *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, this Court found the minimal 'factual nexus' for conditional certification was satisfied when Plaintiffs submitted declarations from 2 plaintiffs and one opt-in plaintiff – far less than the extensive amount of common class

allegations asserted here. 678 F. Supp. 2d 89, 92 (E.D.N.Y. 2010). The *Garcia* Defendants, much like JCP, attempted to argue that the affidavits offered by the plaintiffs were insufficient to establish the required factual nexus because they contained conclusory hearsay allegations. *Id.* at 93. However this Court held, as it should here – and argued for *infra* – that this point was without merit. *Id.*

### 2. Plaintiffs' Declarations Adequately Show Enough Cause To Grant Conditional Certification

Defendants spend considerable effort attempting to rebut Plaintiffs' allegations by claiming that Plaintiffs' declarations constitute nothing more than "hearsay comments" and "belief." Def. Opp pg. 2. Defendants further that argument by submitting 18 self-serving affidavits from current employees. *See* Declaration of Jed Marcus in support of Def. Opp. ("Marcus Decl.") Ex. 1, 3-10, 14, 17-24, 28. Docket No. 91-2. All of this testimony and information should be disregarded as irrelevant and the Court is well within its power to grant conditional certification based upon the sworn statements in Plaintiffs' declarations alone. The instant motion concerns only the first step of the certification process. At this stage, plaintiff's burden is "minimal." *Lynch v. United Servs. Auto. Ass'n.,* 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). "[P]laintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Doucoure v. Matlyn Food, Inc.,* 554 F. Supp. 2d 369, 372 (E.D.N.Y.2008) (quoting *Hoffmann v. Sbarro,* 982 F. Supp. 249, 261 (S.D.N.Y.1997)). The modest factual showing can be satisfied by conclusory hearsay allegations in a plaintiff's declaration. *See Rosario v. Valentine Ave. Disc. Store, Co., Inc.,* 828 F. Supp. 2d 508 (E.D.N.Y. 2011). At this stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch,* 491 F. Supp. 2d at 368. "[A]ny factual variances that

10

may exist between the plaintiff and the putative class do not defeat conditional class certification." *Id.* at 369 (citation omitted).

Defendants argue that Plaintiffs' "assertions about jcpenney's wage and hour policies and practices at other stores are based on nothing more than rank speculation and 'belief.'" Def. Opp. Pg. 17 *citing* Anjum Decl. ¶16; Terrana Decl. ¶13; Forest Decl. ¶17; Monahan Decl. ¶17.[15] However, Plaintiffs have submitted their own sworn declarations as well as the sworn declarations of 5 additional opt-in plaintiffs in conjunction with Plaintiffs' Opp. *See* Wilkinson Decl. Ex. K. All the declarations detail the uncompensated time and unlawful common wage and hour policies that the Plaintiffs and opt-in plaintiffs were subjected to at various JCP store locations within New York State. Defendants argue that these declarations contain some hearsay statements. Def. Opp. Pgs. 2, 24-25. Nonetheless, courts regularly grant conditional certification of collective actions based on employee affidavits setting forth an employer's failure to pay minimum wage or overtime and identifying similarly situated employees by name. *See Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 515 (E.D.N.Y. 2011) (Declarations containing hearsay allegations about employees in other locations but supported by specific facts such as "the number of hours [] worked and the amount [] paid" was enough to satisfy the modest factual showing that employees at 8 store locations were not properly compensated under the FLSA); *Cano v. Four M Food Corp.,* 2009 WL 5710143, at *6 (E.D.N.Y. Feb. 3, 2009) (granting conditional certification based on "statements setting forth defendants' common denial of overtime pay, the plaintiffs' personal knowledge of and the names of other co-workers who were allegedly subject to the same denial of overtime pay, and the opt-in plaintiffs' affidavits attesting to the same.")

---

[15] See the declarations of Afza Anjum ("Anjum Decl."), Janet Terrana ("Terrana Decl."), Camille Forest ("Forest Decl.") and Veronica Monahan ("Monahan Decl.") attached to the Declaration of Brett R. Gallaway in Support of Plaintiffs' Motion for Conditional Certification Ex. A-D. Docket No. 20.

Defendants surprisingly cite to the *Cano* decision as well as *Summa v. Hofstra Univ.* 715 F. Supp. 2d 378 (E.D.N.Y. 2010) and *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003) to acknowledge that "Courts regularly grant motions for approval of a collective action 'based upon affidavits …*identifying by name* similarly situated employees." Def. Opp. pg. 24 *citing Summa*, 715 F. Supp. 2d at 386, n. 6. (emphasis in original).  Defendants then mistakenly claim that because Plaintiffs have "failed to specifically identify any current or former sales associate at any store other than Staten Island" the hearsay statements in Plaintiffs' declarations are insufficient to grant conditional certification. Def. Opp. pg. 24.  Unfortunately for Defendants and despite the large amount of case law to the contrary, Plaintiff Camille Forest *did*, in her declaration, name an employee (Elizabeth [last name unknown] – later confirmed to be Elizabeth Lechner) in the Manhattan location who was subject to the same unlawful policies. Forest Decl. ¶17. Confusingly, Defendants also admit earlier in their opposition brief that Plaintiffs *did* identify Ms. Lechner by name. Def Opp. Pg. 22. This identification alone should be enough to conditionally certify the class.[16] *Wraga v. Marble Lite, Inc.,* 2006 WL 2443554, at *2, (E.D.N.Y. Aug. 22, 2006) (granting conditional certification based on complaint and single affidavit alleging failure to pay overtime where plaintiff stated that he was aware, based on conversations, of other similarly situated employees).

Case law is extremely clear that at this preliminary stage of the litigation, contrary evidence has no bearing on a motion for conditional certification.  In a collective certification analysis, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Young v. Cooper Cameron Corp.,*

---

[16] Furthermore, during her deposition, Ms. Forest identified 4 additional Hourly Employees at the Manhattan location who were subject to the same unlawful wage and hour policies and Ms. Monahan identified 3 additional employees at the Woodbridge location during her deposition. *See* footnote 14, *supra*.

229 F.R.D. 50, 54, (S.D.N.Y. 2005) *citing Krueger v. N.Y. Tel. Co.*, 1993 WL 276058, *2 (S.D.N.Y. 1993) ("The Court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists"). Indeed, at this preliminary stage of the litigation, ***all*** that Plaintiffs are required to establish is that potential class members exist who are similarly situated. *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367-68 (S.D.N.Y. 2007); *Dominguez v. Don Pedro Restaurant*, 2007 WL 271567 (N.D. Ind. Jan. 25, 2007) ("[W]hether the policies at [defendants'] restaurants actually violated the FLSA is a question for later stages in this case.") Courts have consistently held that sworn statements, such as the declarations submitted with Plaintiffs' Opening Brief and Plaintiffs' Opp., constitute more than sufficient evidence to meet the standard for collective action certification. *See e.g. Iglesias-Mendoza* 239 F.R.D. 363, 367 ("At the first stage, the court will look at the pleadings and affidavits.").

### 3. Plaintiffs Have Demonstrated That They Are Similarly Situated To Other JCP Hourly Employees

Contrary to Defendants' belief, courts in this Circuit regularly find plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs have demonstrated that they all were subject to the same allegedly unlawful policy or plan. *Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 516-17 (E.D.N.Y. 2011); *see also Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 93–94 (E.D.N.Y. 2010) (finding that plaintiffs, who were all employed at one restaurant, were similarly situated to employees at two other restaurants where all three locations were owned by the same individuals, employees were shared between the three locations, and plaintiffs knew a co-worker in one of the other locations who was not properly compensated for overtime hours); *Harhash v. Infinity West Shoes, Inc.*, 2011 WL 4001072, at *3, (S.D.N.Y. Aug. 25, 2011) ("The fact that the

13

employees held different positions at different locations does not prevent conditional certification."); *Karic v. Major Auto. Co., Inc.*, 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) (finding that plaintiffs' allegations of a common pay practice among the locations where they worked, "coupled with plaintiffs' claim that there is common ownership and control of all of these entities, including the three dealerships for which no plaintiff has yet appeared, is sufficient" to conditionally certify a class consisting of all of the entities); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y.2007) ("Conditional class certification is appropriate here where all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations.")  As all JCP stores are run from and utilize policies originated by JCP headquarters as well as use the same time keeping system, Jtime, Plaintiffs' detailed allegations regarding common policies and employees at other store locations alone should be enough evidence of similarly situated Hourly Employees to approve conditional certification.

### 4. Defendants' Competing Declarations Should Not Be Considered At This Preliminary Stage

Defendants inappropriately rely on the sworn affidavits of current JCP Hourly Employees and supervisors to argue that this Court should deny conditional certification. Def. Opp. pg. 15. Attached to the Marcus Decl., Defendants submitted 18 declarations from current Hourly Employees and supervisors in an attempt to undermine the credibility of the Plaintiffs' claims and argue the factual merits of the case. Marcus Decl. Ex. 1, 3-10, 14, 17-24, 28.  As an initial matter, statements gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion. *Amador v. Morgan Stanley & Co. LLC*, 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013).   Once again, through their various submissions, the Defendants are asking the Court to resolve factual disputes at the preliminary

14

certification stage. As noted earlier, this is not a task the Court should undertake. *See, e.g., Winfield v. Citibank, N.A.,* 843 F. Supp. 2d 397, 407 n. 6 (S.D.N.Y. 2012) ("[C]ourts in this Circuit regularly conclude that [competing] declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process."); *Pippins v. KPMG LLP,* 2012 WL 19379, at *12 (S.D.N.Y. Jan 3, 2012) (refusing to balance parties' competing affidavits at preliminary certification stage); *Cohen v. Gerson Lehrman Grp., Inc.,* 686 F. Supp. 2d 317, 330 (S.D.N.Y. 2010) (declining to "wade into a thicket of competing factual assertions at this preliminary stage"); *Davis v. Abercrombie & Fitch Co.,* 2008 WL 4702840, at *7 (S.D.N.Y. Oct. 23, 2008) (dueling declarations raise a "factual dispute which the Court cannot resolve at this stage and on this limited record.")

To balance the parties' competing affidavits at this stage would require the Court to determine the facts, determine credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structured to avoid. As long as Plaintiffs' "[a]ffidavits are sufficiently similar and detailed to constitute a preliminary showing that they and other potential plaintiffs together were victims of a common policy or plan, [p]laintiffs have met their burden." *Raniere v. Citigroup Inc.,* 827 F. Supp. 2d 294, 324 (S.D.N.Y. 2011); *see also Davis* 2008 WL 4702840, at *7 ("Defendants cite the declaration of plaintiffs' supervisor attesting that such a practice was never allowed to occur. This, of course, is of the same evidentiary value as plaintiffs' affirmations to the contrary. This is a factual dispute which the Court cannot resolve at this stage and on this limited record." (citation omitted)). Thus, Defendants' misplaced assertion that Plaintiffs' sworn statements are "carbon copies" to each other only ***further corroborates*** Plaintiffs' similarly situated status and need for conditional certification. Def. Opp pg. 17.

### C.   All Opt-In Consent Forms Have Been Properly Filed

Defendants inappropriately use their opposition brief as a secondary platform to raise factual arguments as to the validity of the "40 'consent forms that' Plaintiffs filed after filing their motion." Def. Opp. pg. 25.  First, as identified numerous times in this brief, the Court's limited role on a motion for preliminary certification is simply to determine whether the Plaintiffs have sufficiently alleged that they and other employees were victims of a common policy in violation of the FLSA.  At this stage, the court may not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Jeong Woo Kim v. 511 E. 5th St., LLC*, 2013 WL 6283587 (S.D.N.Y. Dec. 3, 2013) (internal citations omitted).  Furthermore, this issue has already been raised with this Court, fully briefed and the parties are awaiting the Court's determination on this exact issue. Docket Nos. 105-107. As such, Defendants argument to strike Plaintiffs' properly filed consent forms in their opposition to conditional certification is surprising and inappropriate.

### D.   Plaintiffs' Proposed Notice Is Proper

First and foremost, for all the reasons delineated *supra*, Defendants' proposal that the Proposed Notice be limited to only those Hourly Employees who worked at the Staten Island location unduly and impermissibly limits the proposed class.  Expectedly, Defendants cite no case law supporting their position that the Proposed Notice in this case should be limited to only the Plaintiffs' Staten Island location.

Second, Defendants resist the mailing of notice beyond the FLSA's three-year statute of limitations period.  Def. Opp at 30.  However, in *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012), the court expressly ruled that a six-year period is the appropriate time frame for notice to employees:

It is also permissible to extend the notice period to six years for those Personal Bankers who were employed in New York and might therefore have New York Labor Law claims. Because the plaintiff in the *Ruiz* action also brings state law NYLL claims, that are governed by a six-year statute of limitations, this Court may exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367. There may be a number of employees with both timely FLSA and state law claims, and several courts in this Circuit have deemed it appropriate to grant six-year rather than three-year notice periods in such circumstances.

Many other courts have likewise endorsed a six-year notice period. *See, e.g., Moore v. Eagle Sanitation, Inc.,* 276 F.R.D. 54, 60 (E.D.N.Y. 2011); *Wraga v. Marble Lite, Inc.,* 2006 WL 2443554, at *3 (E.D.N.Y. Aug. 22, 2006); *Alcantara v. CNA Management, Inc.,* 264 F.R.D. 61, 66–67 (S.D.N.Y. 2009); *Realite v. Ark Restaurants Corp.,* 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998); *Harrington v. Educ. Mgmt. Corp.,* 2002 WL 1343753, at *2 (S.D.N.Y. June 19, 2002).

Third, Plaintiffs Proposed Notice properly defines the proposed class, while Defendants' proposed amendments improperly limit the nature and scope of Plaintiffs' claims. Not surprisingly, Defendants' class definition is limited to the 3-year FLSA claims period, only includes employees at the Staten Island location, limits the claims to only those involving off-the-clock work and omits Plaintiffs' properly pled schedule based missed punch allegations and unfair time rounding claims. As such, Plaintiffs object to any of Defendants' proposed revisions to the class definition.

Fourth, Defendants incorrectly apply the Second Circuit's decision in *Lundy v. Catholic Health Systems of Long Island*, 711 F.3d 106 (2d Cir. 2013) with regard to references of straight time in the Proposed Notice. The FLSA does not recognize a separate claim for "gap-time" or straight time for uncompensated hours worked under 40 in a week. Def. Opp. pg. 32. However, as described above, this Court routinely allows notice to be sent to potential class members that fall within the 6-year NYLL rather than the 3-year FLSA statute of limitations period. *See Guzman v. VLM, Inc.,* 2007 WL 2994278 (E.D.N.Y. Oct. 11, 2007) (Because this Court can

17

properly exercise supplemental jurisdiction over the NYLL claims arising out of the policies complained of in the FLSA allegations, notice to all similarly situated employees who worked for defendants during the six years prior to the filing of this complaint is proper). As class members that belong to both the FLSA and NYLL classes would then hypothetically receive the same notification, and because straight time *is* compensable under the NYLL, it only makes sense to inform those individuals with both FLSA and NYLL claims that they also may have a claim for uncompensated straight time against the Defendants.

Fifth, Defendants also seek to mislead employees about the purported costs and legal fees they supposedly will incur if they join the action.  In Defendants' proposed notice, employees are told they "may be required to pay costs if they do not prevail" and "may be required to provide information, respond to discovery requests, appear for deposition, and/or testify in court."  Def. Opp. pg. 32.  Again, Courts in this Circuit understandably frown on such heavy-handed tactics. As this Court observed in *Guzman v. VLM, Inc.,* "Given the remote possibility that such costs for absent class members would be other than *de minimis,* and the absence of any showing by defendants that counterclaims are likely to be meaningful in this case, I think such language is inappropriate.  It may have an *in terrorem* effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree." 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007); *See also Garcia v. Pancho Villa's of Hunt. Village, Inc.,* 678 F.Supp.2d 89, 95 (E.D.N.Y. 2010) (rejecting language stating that "individuals who opt in will be subject to discovery obligations, depositions, [and] trial testimony..."); *Schwerdtfeger v. Demarchelier Mgmt., Inc.,* 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011) (citation omitted), ("[c]ourts in this Circuit have generally disapproved of including language indicating burdensome discovery and the possible cost of litigation 'given the remote possibility that such

18

costs for absent class members would be other than *de minimis*, as well as the risk of an *in terrorem* effect that is disproportionate to the actual likelihood of significant costs.'") In light of these authorities, the Court should reject Defendants' attempt to "intimidate putative class members from opting into the case." *Schwerdtfeger,* 2011 WL 2207517, at *6.

Finally, Defendants seek to strike language from Paragraph 2 of the Proposed Notice that the lawsuit seeks straight time wages. As discussed above, this is patently improper and misleading because while the FLSA does not allow recovery for unpaid straight or "gap" time wages, such recovery is clearly permissible under the NYLL. To reiterate, putative class members belong to both the FLSA and NYLL classes and any members will receive the same notification. Because straight time *is* compensable under the NYLL, putative members of this lawsuit should be informed that it seeks recovery for unpaid wages under both the NYLL and the FLSA.

**Conclusion**

For these and other reasons discussed more fully below, Plaintiffs respectfully request that their motion for collective certification be granted.


Dated:  December 19, 2013
        New York, New York

**McLAUGHLIN & STERN, LLP**


By _____
Lee S. Shalov, Esq. (LS-7118)
Brett R. Gallaway, Esq. (BG-1056)
Wade C. Wilkinson, Esq. (WW-1679)
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
lshalov@mclaughlinstern.com
bgallaway@mclaughlinstern.com


Louis Ginsberg, Esq. (LG-1048)
Matthew Cohen, Esq. (MC-2595)
LAW FIRM OF LOUIS GINSBERG, P.C.
1613 Northern Blvd.
Roslyn, New York 11576
Telephone: (516) 625-0105
lg@louisginsberglawoffices.com

*Attorneys for Plaintiffs, the FLSA Collective Class, and the New York Class*

20