IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AFZA ANJUM, JANET TERRANA, VERONICA MONAHAN and CAMILLE FOREST, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs<br>v.<br><br>J.C. PENNEY COMPANY, INC.,<br>J.C. PENNEY CORPORATION, INC.,<br><br>　　　　　　Defendants. | CIVIL ACTION NO.<br>13-CV-00460(RJD)(RER)<br><br><br>ECF CASE<br><br><br>**Oral Argument Requested** |

---

**SURREPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO
PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT
AUTHORIZED NOTICE UNDER THE FAIR LABOR STANDARDS ACT**

---

　　　　　　　　　　　　　　　　　　BRESSLER, AMERY & ROSS, PC
　　　　　　　　　　　　　　　　　　325 Columbia Turnpike
　　　　　　　　　　　　　　　　　　Florham Park, New Jersey 07932
　　　　　　　　　　　　　　　　　　Tel: (973) 514-1200
　　　　　　　　　　　　　　　　　　Fax: (973) 514-1660

　　　　　　　　　　　　　　　　　　Attorneys for Defendants
　　　　　　　　　　　　　　　　　　J.C. Penney Company, Inc., and
　　　　　　　　　　　　　　　　　　J.C. Penney Corporation, Inc

Of Counsel and on the Brief:

　　Jed L. Marcus, Esq. (JM 0163)
　　Tracey Salmon-Smith, Esq. (TS 4642)

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 3

POINT I. ................................................................................................................................... 3

    PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS FAILED TO ESTABLISH A "COMMON POLICY OR PLAN THAT VIOLATED THE LAW."

    A.    There Is No Proof of a Common Policy or Plan of Automatically Deducting Meal Periods ........................................................................................... 3

    B.    There Is No Proof of a Common Policy or Plan of Unlawful Rounding ................. 8

    C.    There Is No Proof of a Common Policy or Plan of Off the Clock Work ................................................................................................................... 9

POINT II. ................................................................................................................................ 10

    PLAINTIFFS CANNOT SUPPORT A NEW YORK STATE-WIDE CLASS

CONCLUSION ...................................................................................................................... 11

-ii-

## TABLE OF AUTHORITIES

**Page**

**CASES**

Fengler v. Crouse Health Found., Inc.,
  595 F. Supp. 2d 189 (N.D.N.Y. 2009)..................................................................................8

Levinson v. Primedia, Inc.,
  No. 02-cv-02222, 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. 2003)..........................................3

Myers v. Hertz Corp.,
  624 F.3d 537 (2d Cir. 2010)..................................................................................................3

Romero v. H.B. Automotive Group, Inc.,
  No. 11-cv-386, 2012 WL 1514810 (S.D.N.Y. 2012) ...............................................................9

Silva v. Calle 8, LLC,
  No. 12-cv-677, 2013 U.S. Dist. LEXIS 171696 (E.D.N.Y. 2013) .................................3, 9, 10

Wolman v. Catholic Health Sys. of Long Island, Inc.,
  853 F. Supp 2d. 290 (E.D.N.Y. 2012) ....................................................................................8

Defendants J.C. Penney Company, Inc. and J.C. Penney Corporation, Inc. (collectively "Defendants" or "JCPenney") respectfully submit this Surreply Memorandum of Law in accordance with the Court's December 11, 2013 Order.

## PRELIMINARY STATEMENT

Plaintiffs' Motion for Conditional Certification is initially based on conclusory allegations contained only in the First Amended Complaint and Plaintiffs' own declarations. After JCPenney filed its Opposition, Plaintiffs requested, and this Court granted, additional class discovery in a last ditch effort to make their "modest showing." Ten depositions were taken. JCPenney produced over 4,300 pages of documents, including each of the original Plaintiffs' pay records accompanied by spreadsheets of all of their time clock punches, paystubs and manual timesheets, as well as the complete pay and time records for a sample set of 25 randomly chosen hourly associates from five store locations in New York State other than Staten Island (since all Plaintiffs are from Staten Island) – Queens Center, Manhattan, Garden City, Lake Grove and the Bronx. None of this highly relevant information supported Plaintiffs' Motion, and thus, was not mention in their Reply.

Plaintiffs fail to carry their "modest burden" of demonstrating that they are entitled to conditional certification of *any* type of class, much less a New York State-wide collective action. They initially alleged, among other things, that (1) hourly employees were required to work "off-the-clock" without pay; and (2) JCPenney instituted a policy of automatic rounding only to the detriment of the employee. However, discovery has now revealed that these alleged unlawful policies do not exist. The allegation of "improper rounding," which is based on nothing more than conjecture, is completely debunked by evidence Plaintiffs advance in supposed support of their Motion, namely the JCPenney jTime Time Attendance Commission Guide which explains JCPenney's rounding policy, that "clock punches are rounded to the nearest 10th of an hour, (6

minutes) at the clock," and that time punches are rounded in both directions – up and down[1]. JCPenney produced to Plaintiffs each of their raw time punches and pay records, which reflect that *punches were rounded in both directions*. In light of this discovery, Plaintiffs allegations alone -- made on knowledge and belief -- are not sufficient to sustain their minimum burden.

Plaintiffs cannot sustain their allegations about automatic meal deductions. Having examined the payroll and time records provided to them in discovery by JCPenney, Plaintiffs now allege only that JCPenney implicitly engaged in an unlawful meal deduction because Office Specialists at one or more retail stores deducted time from hourly employees who did not punch out for meals as dictated by their work schedule. (See Reply MOL at pp. 2-3.) In fact, the record shows that no automatic meal deductions took place. However, even if this were an accurate characterization of the record, which it is not, such a policy would not in and of itself be a violation of the law.

Furthermore, Plaintiffs have not met their modest burden of proving that they are entitled to certification of a class of all hourly associates in New York City, let alone New York state. Plaintiffs have not produced any reliable evidence, hearsay or otherwise, that any JCPenney store, whether in Staten Island or elsewhere, is implicated in an alleged plan or policy to violate the law. Although Plaintiffs produced the declarations of former employees Anna Maria DiMaio, Joseph Castagliola, Lorraine Morales, Christeline Fleming, and Diana Clementi, these declarations are irrelevant because all were former employees from Staten Island and none claimed anything other than their "belief" that their rights were violated.[2]

In sum, Plaintiffs Motion should be denied. Because Plaintiffs have neither identified a *policy* that violates the law or demonstrates that the policy was *common* to others they seeks to

---

[1] (See Declaration of Wade C. Wilkinson, Exhibit A, pg. jcp-ANJUM 0000150.)
[2] (See Declarations of Anna Maria DiMaio, ¶¶ 2, 6, Joseph Castagliola, ¶¶ 2, 6, Lorraine Morales, ¶¶ 2, 6, Christeline Fleming, ¶¶ 2,6, and Diana Clementi, ¶¶ 2, 6.)

represent, the case cannot proceed collectively, and must proceed on an individual basis.

## ARGUMENT

I. **PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS FAILED TO ESTABLISH A "COMMON POLICY OR PLAN THAT VIOLATED THE LAW."**

Plaintiffs must demonstrate that they were victims of a "common policy or plan that violated the law." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010). Where Plaintiffs have neither identified an unlawful policy or demonstrated that the policy was common to others they seek to represent, the case cannot proceed collectively, and must proceed on an individual basis. Levinson v. Primedia, Inc., No. 02-cv-02222, 2003 U.S. Dist. LEXIS 20010, *4-5 (S.D.N.Y. 2003). "[Plaintiff] must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations." Silva v. Calle 8, LLC, No. 12-cv-677, 2013 U.S. Dist. LEXIS 171696 at *7 (E.D.N.Y. 2013).

A. **There Is No Proof of a Common Policy or Plan of Automatically Deducting Meal Periods.**

Plaintiffs submitted the testimony of four JCPenney Office Specialists who processed payroll for hourly associates at four different JCPenney stores in New York City and on Long Island. Plaintiffs mischaracterized their testimony, however, falsely claiming that each testified that they "automatically" deducted a meal period when the employee in question missed a punch. In fact, each Office Specialist testified to a store-specific approach, and none admitted "automatically" deducting meal periods. A review of that testimony shows no violation of law.

Bernice McDonald, Office Specialist in the Garden City JCPenney store, testified that before using an associate's scheduled time to correct a missed punch she attempted to contact the associate:

> A. I usually try to call them first and ask them, you forgot to punch out for lunch. That's how we say it ... But if they didn't – I would ask them, did you take your hour or half, depending on what the schedule was? If I couldn't get in touch with them, I would put the time that they were scheduled.

(McDonald Dep. Tr. 33:10-19.)

> Q. So every time that employee missed a punch, you went and talked to them?
>
> A. Not every. Sometimes I would call them on the phone, page them to me, or talk to them the next day when they came in.
>
>                   \*    \*    \*
>
> A. Many would come to me and tell me, I forgot to punch in for my meal, out for my meal, Many of them would come to me and tell me. They knew it was their payroll.

(Id. at 34:13-17, 42:14-17.)

Benita Rios, an Office Specialist in Queens Center, NY store, testified that she does not use an employee's schedule work time when punches are missing:

> Q. What would you do if any employee didn't take lunch?
>
> A. We leave it like that.
>
> Q. You leave it like that?
>
> A. Yes. If they come in to say I didn't take lunch, I have one hour lunch and I take half hour, we fix it then.

(Rios Dep. Tr. 17: 14-20.)

> Q. When a missed punch occurs do you use the employee's scheduled time? [....]
>
> A. No we have to call. We call the employees to find out how long they take a lunch or what time was the lunch because sometimes they have a schedule time that says twelve o'clock and they never go to twelve, they go to one or 1:30, so we have to find out what is going happen.
>
>                   \*    \*    \*
>
> Q. Do you ever use scheduled time? (Objection to form.)

> A. I don't use the scheduled time I ask the manager or the supervisor was (sic) at the moment we have the supervisors in that department.
>
> * * *
>
> Q. Under what circumstances would you if you ever used a scheduled time for an employee's missed punch?
>
> A. I don't remember doing it but most of the time we make sure with the employees.
>
> Q. You've never inputted a scheduled time for an employee's missed punch.
>
> A. No, its either let them know, sometimes they call, they leave a [note] even if its not the time sheet they leave a note to say what is mistake.
>
> Q. And this happens every time?
>
> A. Yes, every day that happens.
>
> Q. I'm not asking every day if that happens. I'm saying every time an employee misses a punch?
>
> A. Yes.
>
> Q. They follow up with you or you follow up with them to find out when they have been inputting into the system.
>
> A. Yes.

(Rios Dep. Tr. 8:18 to 9:4; 27:1-6; 31:3-23.)

Delrose Bryan, Office Specialist in the JCPenney store in the Bronx, testified that only in very limited circumstances when she had to close payroll would she use an associate's scheduled time without speaking to the associate first and even in those cases, the issue of the punch could be resolved thereafter:

> Q. Do you ever use an employees schedule time if they have missed a punch and haven't filled out a manual time sheet? (Objection)
>
> A. Yes.
>
> Q. Under what circumstances do you do that?

2040624_1

> A. Say, for instance – say for instance, it's a Saturday or I come in a Monday and I have to close payroll at a certain time on Monday. They didn't leave – they didn't sign the manual time sheet, they are not scheduled to work. So I will input the time that they were scheduled to leave. If they leave later than they will come and sign the manual time sheet.
>
> Q. How do you know that they will do that?
>
> A. They will come or they will call and leave a message. They will come and say, you know, I forgot to clock out Saturday and I left later than the time that was shown on my schedule. So I say, okay. Go ahead and sign the manual time sheet of the time you left.

(Bryan Dep. Tr. 30-31.)

Lisa Thompson, the Office Specialist from Staten Island, testified that only in very limited circumstances would she use an associate's scheduled time without some communication from that associate that he or she worked longer than scheduled:

> Q. So then the only time that you would use the scheduled start or end shift would be if the employee didn't sign the manual time log that's in your office? (Objection)
>
> A. If they did not sign the manual time log, leave me a note or verbally tell me, and I didn't see them in the time frame to close payroll, then I would put the time in that they were scheduled.

(Thompson Dep. Tr. 87: 24 to 88:10.) As Ms. Thompson noted, she also corrected the punches after payroll was submitted.

> Q. So the following week, week two, he submits a manual timesheet to you and that manual time sheet says I worked until 5:30, and then on the week two paycheck, is he paid for the extra 30 minutes?
>
> A. Yes, I can go back in. I can correct his time sheet and add the 30 minutes onto his time and he would be compensated for that time.
>
> Q. Did that sort of situation or similar situation ever occur? (Objection)
>
> A. It's happened.
>
> Q. Okay. Did you correct the timesheet on every occasion that it happened?

-6-

A. As soon as it was brought to my attention, yes.

(Thompson Dep. Tr. 74:16 to 75: 3.)

In sum, the undisputed record shows first, that meal periods are not automatically deducted from an hourly associates wages, and second, that each Office Specialist has different policies for dealing with missed punches. The following chart demonstrates these differences:

**Missed Meal Punches[3]**

|        | Garden City (McDonald) | Queens Center (Rios) | Bronx (Bryan) | Staten Island (Thompson) |
|--------|------------------------|----------------------|---------------|--------------------------|
| Step 1 | Review **"Meal Not Taken"** Report | Review **"Meal Not Taken"** Report | Review **"Unauthorized Records Report"** | Review **"Unauthorized Records Report"** |
| Step 2 | Review Schedule to determine if meal was scheduled | Review **"Call Out Log"** to identify associates who called out sick and **"Manual Time "Sheet"** to determine whether associate reported missed punch | Review **"Daily Call Out Log"** to identify associates who called out sick and **"Manual Time "Sheet"** to determine whether associate reported missed punch | Review **"Manual Time "Sheet"** to determine whether associate reported missed punch |
| Step 3 | If meal scheduled, communicate with associate and supervisor to determine whether associate worked through meal period | Talent Resource Lead Expert reviews **"Meal Not Taken"** and speaks with associate. Will call employee at home if necessary | Review Schedule to determine if meal was scheduled | Review Schedule to determine if meal was scheduled |
| Step 4 | Deduct only if meal period confirmed | Deduct only if meal period confirmed | Talent Resource Lead Expert reviews **"Meal Not Taken"** and speaks with associate. | If meal scheduled, communicate with associate and supervisor to determine whether associate worked through meal period. |
| Step 5 | jTime automatically send the associate a message regarding change in time. | jTime automatically send the associate a message regarding change in time. | Deduct only if meal period confirmed | If unable to confirm, will revise to show punch per schedule |
| Step 6 | Will correct any changes upon notification by employee. | Will correct any changes upon notification by employee. | jTime automatically send the associate a message regarding change in time. | jTime automatically send the associate a message regarding change in time. |
| Step 7 |  |  | Will correct any changes upon notification by employee. | Will correct any changes upon notification by employee. |

---

[3] Testimony taken from the Declarations of Bernice McDonnell, Benita Rios and Delrose Bryan (Marcus Decl. Exhs. 5, 6, and 8), and the Deposition Testimony of Lisa Thompson, Tr. 34:14 to 35:18; 36:6 to 37:5; 72:1-3; 74:16 to 75:3; 87: 24 to 88: 10 (Wilkerson Decl., Exh. I.)

Only two Office Specialists, Lisa Thompson and Delrose Bryan, in extremely limited circumstances, used an associate's scheduled time to correct a missing time punch because payroll needed to be closed so that all store associates could be paid on time. Even then, if necessary, reversals were subsequently made.

Even if JCPenney automatically deducted for a meal period, which it did not, that in and of itself would not be a violation of the law. "Automatic meal deduction policies are not *per se* illegal." Wolman v. Catholic Health Sys. of Long Island, Inc., 853 F. Supp 2d. 290, 301 (E.D.N.Y. 2012) ("automatic meal deduction policies are not *per se* illegal"); Fengler v. Crouse Health Found., Inc., 595 F. Supp. 2d 189, 195 (N.D.N.Y. 2009). Moreover, "there is no duty to ensure that employees are not working through unpaid meal breaks, and employers utilizing an automatic meal deduction policy may legally shift the burden to their employees to cancel the automatic deduction if they work through an unpaid meal break." Wolman, 853 F. Supp 2d. at 301. Where, as here, an employer reverses the deduction when it becomes aware that a worker has not taken a meal break, it does not act unlawfully. Id.

**B.     There Is No Proof of a Common Policy or Plan of Unlawful Rounding.**

Plaintiffs allege that JCPenney had a policy of improperly rounding time punches in one direction to the detriment of the associates based on conjecture of the four Plaintiffs. Such conjecture is not enough to establish that JCPenney had an unlawful rounding policy. JCPenney's rounding policy, as set forth in the jTime Time Attendance Commission Guide stated: "Clock punches are rounded to the nearest 10th of an hour, (6 minutes), at the clock."[4]

In discovery, JCPenney produced to Plaintiffs each of their raw time punches and pay records, a review of which shows that the punches were rounded in both directions. Thus,

---

[4] (Wilkinson Dec. at Exhibit A, pg. jcp-ANJUM 0000150.)

-8-

2040624_1

Plaintiffs have not made the modest factual showing needed to meet their minimal burden. "The absence of factual support regarding similarly situated potential plaintiffs is particularly relevant when plaintiff has had the benefit of some discovery." Silva, 2013 U.S. Dist. LEXIS 171696 at *7, See, e.g., Romero v. H.B. Automotive Group, Inc., No. 11-cv-386, 2012 WL 1514810 at * 10 (S.D.N.Y. 2012) (conditional certification denied where plaintiffs had benefit of class discovery and did not utilize pay records to show widespread violation.)

      C.     **There Is No Proof of a Common Policy or Plan of Off the Clock Work.**

There is inadequate factual support for the existence of a common policy or plan to require hourly associates to engage in such work and not get paid. None of the Plaintiffs, under oath, substantiated any of their conclusory allegations. Forest, when asked to review her pay records and explain how, when and where she was deprived of compensation, admitted that she could not explain how she was deprived of compensation. (Forest Dep. Tr. 136:20-23.) Anjum admitted that she did not know anything about the JCPenney timekeeping system and was never told not to clock out for a meal period. She also conceded that, except for her last paycheck, she never examined any of her pay records or time records. (Anjum Dep. Tr. 76:12-14; 90:15-20; 104:2-25; 105:1-25; 106:1-5.) Terrana admitted that she never found a mistake on her paycheck, and that there were no inaccuracies in her pay records. (Terrana Dep. Tr. 64: 6-14; 72:16-25; 73:1-2; 91:9-14.) Although she claims that she worked "off the clock," Terrana admitted that she could not testify as to the days or number of hours she worked or whether the work was before or after her shift. (Terrana Dep. Tr. 94:17-25; 95:1-3.) As for Monahan, Plaintiffs cherry picked her testimony, navigating away from Monahan's admission that she had no proof that she was denied compensation. In her deposition, she admitted that she "could have been exaggerating," (Monahan Dep. Tr. 74:3-16), and conceded that no one ever told her not to clock in for work or not to correct her time if inaccurate. (Monahan Dep. Tr. 68:6-25; 69:3-5; 76:13-

-9-

15.) Although she claimed that she might assist a customer after she clocked out, Monahan acknowledged that she was never instructed not to clock back in. (Monahan Dep. Tr. 70:1-15.) As with the others, Monahan has no idea how much compensation JCPenney allegedly owes her. (Monahan Dep. Tr. 97:25; 98:1-9.)

## II. PLAINTIFFS CANNOT SUPPORT A NEW YORK STATE-WIDE CLASS

JCPenney, in its opposition, addressed the lack of factual support for certification of any class beyond Staten Island; the argument will not be repeated now. Despite extended class discovery, Plaintiffs have failed to provide any *factual nexus* between the alleged violations of law and any JCPenney store beyond Staten Island. Indeed, beyond the identification of one former associate employed in Manhattan, all the other employees whose declarations are submitted in support of the Reply and/or whom Plaintiffs reference therein were employees of the Staten Island store. In short, Plaintiffs' motion is "deficient in that it does not clearly define the universe of similarly situated individuals..." Silva, 2013 U.S. Dist. LEXIS 171696 at *11. Indeed, if there is any identifiable class, it is limited to former hourly sales associates in Staten Island.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in defendants' Opposition papers, J.C. Penney Company, Inc., and J.C. Penney Corporation, Inc., respectfully request that Plaintiffs' request for conditional certification and notice be denied.

Dated:   January 8, 2014                                   Respectfully submitted,
          Florham Park, NJ

                                                      **BRESSLER AMERY & ROSS, P.C.**

                                                      By: /s/ Jed Marcus
                                                          Jed L. Marcus (JM 0163)

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing "**Surreply Memorandum Of Law In Further Opposition To Plaintiffs' Motion For Conditional Certification And Court Authorized Notice Under The Fair Labor Standards Act**" was served via electronic mail upon Plaintiffs to their counsel, as follows:

      Lee S. Shalov, Esq.
      Brett Gallaway, Esq.
      McLaughlin & Stern, LLP
      260 Madison Avenue
      New York, New York 10016
      (212) 448-1100
      lshalov@mclaughlinstern.com
      bgallaway@mclaughlinstern.com

      Louis Ginsberg, Esq.
      Law Firm of Louis Ginsberg, P.C.
      1613 Northern Boulevard
      Roslyn, NY 11576
      lg@louisginsberglawoffices.com


                       /s/ Jed Marcus
                       Jed Marcus


Dated:   January 8, 2014
           Florham Park, NJ