UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
AFZA ANJUM, JANET TERRANA,
VERONCIA MONAHAN and CAMILLE
FOREST, on behalf of themselves and all
others similarly situated,

                     Plaintiffs,

            - against -

J.C. PENNEY COMPANY, INC.,
J.C. PENNEY CORPORATION, INC.,

                 Defendants.
-------------------------------------------------------- x

**MEMORANDUM & ORDER**

13 CV 460 (RJD) (RER)

DEARIE, District Judge

      Plaintiffs Afza Anjum, Janet Terrana, Veronica Monahan, and Camille Forest (the

"Named Plaintiffs") were all employed, for varying periods of time between 2003 and 2012, as

full or part-time sales associates in retail store number 2463 of defendants J.C. Penney Company,

Inc. and J.C. Penney Corporation, Inc. (together "J.C. Penney" or "Defendants"), located at 140

Marsh Avenue, Staten Island, New York, 10314 (the "Staten Island Store").  Plaintiffs bring this

lawsuit on behalf of themselves and a putative class of similarly situated hourly paid sales

associates ("Sales Associates"), alleging that J.C. Penney violated the Fair Labor Standards Act

(the "FLSA") and New York State Labor Law ("NYLL") by failing to fully compensate its Sales

Associates for the hours they worked and failing to pay overtime wages. Since the filing of the

complaint, fifty-two additional current or former J.C. Penney Sales Associates (collectively the

"Opt-In Plaintiffs" and, together with the Named Plaintiffs, the "Plaintiffs") have opted-in as

plaintiffs in this action using the FLSA Section 216(b) consent procedure. ECF Nos. 25-29, 31-

36, 39-72, 74-80. In May of 2013, the Plaintiffs sought an order conditionally certifying this case

as a collective action under the FLSA, thereby permitting notice to be sent to potential plaintiffs

who may wish to join the action. ECF No. 19. This motion was delayed by (1) the subsequent motions by the Defendants to dismiss the first amended complaint pursuant to Rules 12(b)(1) and (6), ECF No. 97, and to strike the consent notices filed by the Opt-In Plaintiffs as improperly solicited, ECF No. 105, followed by (2) the Defendants' request for a pre-motion conference for a partial summary judgment motion, ECF No. 125.[1]

The Court now returns to Plaintiffs' conditional certification motion and preliminarily approves collective action certification insofar as the plaintiff class shall consist of all Sales Associates who worked at the Staten Island Store, as well as J.C. Penney's Manhattan retail store (the "Manhattan Store"), during the relevant period, but denies the motion as to the Sales Associates employed at the other retail stores owned and operated by J.C. Penney in the State of New York. Within twenty (20) business days from the date of this order, i.e., by July 3, 2015, Plaintiffs are directed to amend the proposed notice of pendency and consent to join (the "Notice") and submit the amended version for the Court's approval, and J.C. Penney is directed to produce the names, last known physical addresses, last known email addresses, and last known telephone numbers of each potential plaintiff.

BACKGROUND

Plaintiffs propose a putative class consisting of all Sales Associates employed in J.C. Penney retail stores in the State of New York at any time during the relevant period. According to J.C. Penney, this putative class would encompass forty-seven J.C. Penney retail stores in the State of New York, for a total of nearly 3,500 Sales Associates.

---

[1]     On October 9, 2014, this Court denied Defendants' motion to dismiss under Rule 12(b)(1), denied in part and granted in part Defendants' motion to dismiss under Rule 12(b)(6), and denied Defendants' motion to strike the consent notices filed by the Opt-In Plaintiffs. ECF No. 124. And in January of this year, the Plaintiffs agreed to dismiss with prejudice the claims at the basis of the defendants' planned partial summary judgment motion. ECF No. 135.

Each of the Named Plaintiffs allege that they were not fully compensated for the hours they worked while employed as Sales Associates at the Staten Island Store, because J.C. Penney engaged in three time-keeping practices that "systematically" undercounted their time: (1) requiring Sales Associates to work while off-the-clock; (2) automatically deducting time for meal breaks, even when Sales Associates were working and had not clocked out; and (3) configuring the time-keeping system to automatically round down, thereby reducing Sales Associates' credited on-the-clock time. Second Amended Complaint, ECF No. 129 at ¶¶ 2, 24-34. Because the Plaintiffs agreed to dismiss with prejudice their automatic rounding claims, only the off-the-clock work and meal deduction claims remain. ECF No. 135.

Each of the Named Plaintiffs submitted a declaration alleging that they were not fully compensated for the hours they worked while employed as a Sales Associate at the Staten Island Store. For example, Afza Anjum, employed at the Staten Island Store from September 13, 2003 to November 8, 2012, claims that many times, especially during the holiday season, J.C. Penney required her to perform uncompensated work through all or part of her automatically deducted meal break. Decl. of Brett R. Gallaway In Support of Pls.' Mot. for Conditional Certification and Court Authorized Notice Pursuant to Sec. 216(b) of the FLSA [hereinafter Gallaway Decl.], Ex. A at ¶ 6 (E.D.N.Y. filed May 30, 2013), ECF No. 20. Anjum also alleges that she was frequently required by her supervisors to put in hours off-the-clock. Id. at ¶ 9. Anjum's declaration further notes her belief that her experience was "typical" to that of the other Sales Associates employed at the Staten Island Store, as well as her belief that the thousands of Sales Associates at the other J.C. Penney retail stores in the State of New York were subject to the same or similar policies. Id. at ¶¶ 15-16. To support this claim, Anjum names three other Sales Associates at the Staten Island Store, who she claims experienced similar wage and hour violations. Id. at ¶ 15.

The declarations of each of the other Named Plaintiffs contain essentially the same allegations of off-the-clock work and meal deductions. See id. at Ex. B at ¶¶ 8, 11-13 (Janet Terrana) (naming, as similarly situated, three Sales Associates at the Staten Island Store); id. at Ex. C, ¶¶ 6, 9, 16-17 (Veronica Monahan); id. at Ex. D, ¶¶ 6, 9, 16-17 (Camille Forest) (naming, as similarly situated, Elizabeth Lechner, a Sales Associate at the Manhattan Store).

In preparation for their motions, the parties also took depositions of each of the Named Plaintiffs. Decl. of Wade C. Wilkinson in Further Support of Pls.' Mot. for Conditional Certification and Court Authorized Notice Pursuant to Sec. 216(b) of the FLSA [hereinafter Wilkinson Decl.], at Exs. E – H (E.D.N.Y. filed Jan. 8, 2014), ECF No. 116. In her deposition, named plaintiff Camille Forest offered all or part of the names of four Sales Associates at the Manhattan Store, with whom she claimed to have spoken about the lawsuit, two of whom allegedly told Forest that they had also been required to work off-the-clock or perform uncompensated work during their meal breaks.[2] Id. at Ex. F, 7, 10, 14, 23, 28-30, 170. One of the named Manhattan Store Sales Associates, Elizabeth Lechner, later joined this action as an Opt-In Plaintiff. ECF No. 41.

Five of the Opt-In Plaintiffs, all former employees of the Staten Island Store, also submitted declarations in support of the motion for conditional certification, similarly alleging that they were required to perform off-the-clock work and work during uncompensated meal breaks. See Wilkinson Decl. at Ex. K.

---

[2]      Named plaintiff Veronica Monahan claimed in her deposition that she had run into an individual at a non-J.C. Penney retail store in Woodbridge who had experienced similar wage and hour violations while working at an unidentified J.C. Penney retail store. Wilkinson Decl. at Ex. H, 10-12. Monahan states that three to four individuals were present during this conversation but describes only one of them as a former J.C. Penney employee. Id. Plaintiffs cite this testimony to claim that Monahan spoke with three to four Sales Associates from the Woodbridge J.C. Penney retail store, who confirmed similar violations. The Court does not see, however, how Monahan's testimony supports this conclusion.

The Defendants, in turn, submitted declarations of their own, resolutely denying the allegations put forth by the Named Plaintiffs. These include declarations from so-called "office specialists," responsible for resolving time sheet issues for Sales Associates at the Staten Island Store and the Manhattan Store, as well as J.C. Penney retail store locations in the Bronx, Queens, and Garden City. See Decl. of Jed Marcus [hereinafter Marcus Decl.], Exs. 5-9 (E.D.N.Y. filed Aug. 22, 2013), ECF No. 91-2 (outlining the office specialists' process for adjusting time sheets where Sales Associates missed meal punches).[3] Defendants also provided declarations from various Sales Associates and supervisors employed at the Staten Island Store, asserting that the Sales Associates were well-informed about how to review and correct their time sheets on the J.C. Penney time-keeping system known as "jTime," and that neither they nor their colleagues (including the Named Plaintiffs) were ever required to work off-the-clock or through their meal breaks. Id. at Exs. 16-23, 27.

---

[3]    During the depositions of some of the office specialists, they testified about how each of their four retail stores resolved time sheet issues for Sales Associates, in accordance with the general instructions in J.C. Penney's guide for the company's time-keeping system (the "jTime Guide"). Wilkinson Decl. at Exs. B-D, I-J (office specialists); see also id. at Ex. A (jTime Guide).

   While the testimony of the office specialists does suggest some personal differences in implementation, the basic procedure remains the same: the office specialist reviews missed punches, compares the missed punches to the planned schedule, and attempts to communicate with the Sales Associate. The office specialist then either waits for the Sales Associate to confirm their missed meal or writes them down as taking their scheduled meal break, making requested changes upon notification by the Sales Associates in a manual time sheet. See Wilkerson Decl., Ex. B at 33-35, 46-47, 70-72 (Bernice McDonnell – office specialist at Garden City retail store); id. at Ex. C, 53-56, 60-62, 66, 77-80, 85-88 (Delrose Bryan – office specialist at Bronx retail store); id. at Ex. I, 34-37, 69-75, 88-92, 100-101 (Lisa Thompson – office specialist at the Staten Island Store); id. at Ex. J, 19-20, 44, 47-48 (Benita Rios – office specialist at Queens retail store).

DISCUSSION

Plaintiffs move for this Court to (1) preliminarily certify this case as a collective action, (2) compel Defendants to furnish the contact information of potential plaintiffs to the action, and (3) authorize Plaintiffs to send a Notice to those potential plaintiffs, advising them that they may join this action. Defendants argue that the Plaintiffs have not made the minimum required factual showing that the Named Plaintiffs are similarly situated to all Sales Associates employed in J.C. Penney retail stores in the State of New York and assert that the Plaintiffs' meal deduction claims do not state a violation under the FLSA. Defendants also object to some of the language of the proposed Notice. Finally, Defendants renew their request to strike the consent notices, filed by the Opt-In Plaintiffs, as improperly solicited.

1. <u>Conditional Certification under the FLSA</u>

A. *Legal Standard*

Under the FLSA, an action to recover unpaid wages "may be maintained against any employer . . . by any one or more employees for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because section 216 additionally provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing," FLSA actions brought pursuant to this section are not considered class actions, but collective actions. <u>Id.</u>; <u>see also</u> <u>Chen v. Oceanica Chinese Rest., Inc.</u>, No. 13-CV-4623 (FB) (VVP), 2014 WL 1338315, at *3 (E.D.N.Y. Apr. 2, 2014); <u>Damassia v. Duane Reade, Inc.</u>, No. 04-CV-8819 (GEL), 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006).

"Although the FLSA does not contain a class certification requirement, . . . orders [authorizing notice to potential plaintiffs] are often referred to in terms of 'certifying a class.'" <u>Rosario v. Valentine Ave. Discount Store, Co., Inc.</u>, 828 F. Supp. 2d 508, 513 (E.D.N.Y. 2011)

(quoting Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009)) (internal

quotation marks omitted). In fact, this certification "is only the district court's exercise of the

discretionary power . . . to facilitate the sending of notice to potential class members." Myers v.

Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010) (internal citation omitted). "Thus,

'certification' is neither necessary nor sufficient for the existence of a representative action under

FLSA, but may be a useful 'case management' tool for district courts to employ in 'appropriate

cases.'" Id. (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169, 174 (1989)).

    The Second Circuit has adopted a "two-step process for determining whether to certify

collective actions under the FLSA." Chen, 2014 WL 1338315, at *3 (citing Myers, 624 F.3d at

554-555). First, during the "conditional certification" stage, "the court mak[es] an initial

determination to send notice to potential opt-in plaintiffs who *may* be 'similarly situated' to the

named plaintiffs with respect to whether a FLSA violation has occurred." Myers, 624 F.3d at 555

(emphasis added). Later, during the second stage, the district court determines, "on a fuller

record . . . whether the plaintiffs who have opted in *are in fact* 'similarly situated' to the named

plaintiffs." Id. (emphasis added).[4] If not, "[t]he action may be 'de-certified' . . . and the opt-in

plaintiffs' claims may be dismissed without prejudice." Id.

    The "threshold issue," therefore, "in deciding whether to authorize class notice in an

FLSA action[,] is whether plaintiffs have demonstrated that the potential class members are

'similarly situated.'" Garcia v. Pancho Villa's of Huntington Vill., Inc., 678 F. Supp. 2d 89, 92

(E.D.N.Y. 2010). Although neither the FLSA nor its implementing regulations elaborate what is

meant by "similarly situated," courts in the Second Circuit apply a "lenient standard," at the first

---

[4]    Importantly, "[t]he heightened scrutiny standard is only appropriate after the opt-in
period has ended and the court is able to examine whether the *actual* plaintiffs brought into the
case are similarly situated." Gortat v. Capala Bros., Inc., No. 07-CV-3629 (ILG), 2010 WL
1423018, at *10 (E.D.N.Y. Apr. 9, 2010) (emphasis in original).

stage of conditional certification, requiring only a "modest factual showing sufficient to demonstrate that [the named plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the law." Lujan v. Cabana Mgmt., Inc., No. 10-CV-755 (ILG), 2011 WL 317984, at *4 (E.D.N.Y. Feb. 1, 2011) (quoting Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008)) (alteration in original); see also Myers, 624 F.3d at 555. In other words, "[t]he court must find some identifiable factual nexus which binds the named plaintiffs and potential class members together . . . ." Jin Yun Zheng v. Good Fortune Supermarket Grp., No. 13-CV-60 (ILG), 2013 WL 5132023, at *4 (E.D.N.Y. Sept. 12, 2013) (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)) (internal quotation marks omitted).

"The standard of proof at this stage is low," Chen, 2014 WL 1338315, at *3, and "[p]laintiffs' burden is minimal because the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second certification stage," Kalloo v. Unlimited Mech. Co. of NY, Inc., 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012). But, although the plaintiffs' burden during the first stage of certification is not "onerous," they must still "provide actual evidence of a factual nexus between [their] situation" and that of the potential class members, "rather than mere conclusory allegations." Prizmic v. Armour, Inc., No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006); see also Ahmed v. T.J. Maxx Corp., No. 10-CV-3609 (ADS) (ARL), 2014 WL 5280423, at *3 (E.D.N.Y. Sept. 24, 2014). "Nonetheless, courts regularly grant conditional certification of collective actions based on employee affidavits setting forth an employer's failure to pay minimum wage or overtime and identifying similarly situated employees by name." Rosario, 828 F. Supp. 2d at 515 (collecting cases). Plaintiffs may satisfy their burden of proof "by relying on their own pleadings,

affidavits, declarations, or the affidavits and declarations of other potential class members." Amador v. Morgan Stanley & Co. LLC, No. 11-CV-4326 (RJS), 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013) (quoting Hallissey v. Am. Online, Inc., No. 99-CV-3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008)).

Importantly, "[a]t the conditional certification stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Ahmed, 2014 WL 5280423, at *3 (quoting Amador, 2013 WL 494020, at *2-3) (internal quotation marks omitted); see also Kalloo, 908 F. Supp. 2d at 346 ("[T]he focus of the inquiry 'is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' . . . with respect to their allegations . . . .'") (quoting Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005)).

B. *Analysis*

i. The Staten Island Store and the Manhattan Store

Plaintiffs' submission satisfies their minimal burden of showing that they are similarly situated to Sales Associates at the Staten Island Store and the Manhattan Store. Each of the four Named Plaintiffs has submitted a declaration alleging that they were not fully compensated for the hours they worked while employed as Sales Associates at the Staten Island Store, because they were required to perform off-the-clock work and work during uncompensated meal breaks. Gallaway Decl., Ex. A at ¶¶ 6, 9 (Afza Anjum); id. at Ex. B at ¶¶ 8, 11 (Janet Terrana); id. at Ex. C, ¶¶ 6, 9 (Veronica Monahan); id. at Ex. D, ¶¶ 6, 9 (Camille Forest).

Additionally, each of the Named Plaintiffs notes their belief that their experience was "typical" to that of the other Sales Associates employed at the Staten Island Store, as well as their belief that the thousands of Sales Associates at the other J.C. Penney retail stores in the

9

State of New York were subject to the same or similar policies. Id. at Ex. A at ¶¶ 15-16 (Afza Anjum) (naming three other Sales Associates at the Staten Island Store); id. at Ex. B at ¶¶ 12-13 (Janet Terrana) (naming three Sales Associates at the Staten Island Store); id. at Ex. C, ¶¶ 16-17 (Veronica Monahan); id. at Ex. D, ¶¶ 16-17 (Camille Forest) (naming Sales Associate Elizabeth Lechner, at the Manhattan Store).

Furthermore, in preparation for their motions, the parties took depositions of each of the Named Plaintiffs. Id. at Exs. E-H. In her deposition, named plaintiff Camille Forest offered all or part of the names of four Sales Associates at the Manhattan Store, with whom she claimed to have spoken about the lawsuit, two of whom allegedly told Forest that they had also been required to work off-the-clock or perform uncompensated work during their meal breaks. Id. at Ex. F, 7, 10, 14, 23, 28-30, 170. And one of the named Manhattan Store Sales Associates, Elizabeth Lechner, later joined this action as an Opt-In Plaintiff. ECF No. 41.

Finally, five of the Opt-In Plaintiffs, all former employees of the Staten Island Store, submitted declarations in support of the motion for conditional certification, similarly alleging that they were required to perform off-the-clock work and work during uncompensated meal breaks. See Wilkinson Decl., Ex. K.

Defendants object to statements in the Plaintiffs' submissions that amount to hearsay or conclusory allegations and cite a number of cases to support their argument that the Plaintiffs have not made a sufficient factual showing that they are similarly situated to the potential opt-in plaintiffs. With respect to the Staten Island Store and the Manhattan Store, however, the Court is not persuaded by such arguments.

Although the Plaintiffs must "provide actual evidence of a factual nexus between [their] situation" and that of the potential class members, "rather than mere conclusory allegations,"

Prizmic, 2006 WL 1662614, at *2, "courts regularly grant conditional certification of collective actions based on employee affidavits setting forth an employer's failure to pay minimum wage or overtime and identifying similarly situated employees by name," Rosario, 828 F. Supp. 2d at 515 (collecting cases). And "[t]he fact that these allegations may be based on hearsay does not diminish their value at this stage," Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 449 (S.D.N.Y. 2013), because "courts regularly rely on . . . hearsay statements in determining the propriety of sending notice" during the first stage of conditional certification, Salomon v. Adderley Indus., Inc., 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012) (citing Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 59 (E.D.N.Y. 2011)). This is especially true where the plaintiffs provide firsthand accounts of the violations alleged.

In this case, each of the four Named Plaintiffs has personally attested to the violations they claim occurred during their employment as Sales Associates at the Staten Island Store, and they have identified by name similarly situated employees at both the Staten Island Store and the Manhattan Store, at least some of whom have since opted-in to the collective action. Therefore, the Plaintiffs have satisfied their burden to make a "modest factual showing," at this stage of conditional certification, that they are similarly situated to the employees at the Staten Island Store and the Manhattan Store. See, e.g., Chen, 2014 WL 1338315, at *4 (granting conditional certification to restaurant employees based on the declarations of the named plaintiff and three opt-in plaintiffs, and noting that "[c]onditional certification has been granted in other cases with far less robust evidentiary support"). Indeed, courts in this Circuit "have approved conditional collective action certification based on" as little as "the facts alleged in the complaint and one accompanying affidavit." Gonzalez v. Scalinatella, Inc., No. 13-CV-3629 (PKC), 2013 WL 6171311, at *2 (S.D.N.Y. Nov. 25, 2013) (collecting cases).

Defendants' citations to the contrary are easily distinguishable, as those cases involve much broader requests for conditional certification, with far less evidentiary support. See, e.g., Ahmed v. TJ Maxx, No. 10-CV-3609 (ADS) (ETB), 2013 WL 2649544, at *13 (E.D.N.Y. June 8, 2013) (denying conditional certification because depositions from employees in New York and Connecticut were "not sufficient to create a factual nexus between the [p]laintiff and the thousands of [employees] working in more than 4000 [of the defendant's] stores . . . nationwide"); Ikikhueme v. CulinArt, Inc., No. 13-CV-293 (JMF), 2013 WL 2395020, at *1-2 (S.D.N.Y. June 3, 2013) (denying conditional certification because plaintiff's claims, arising from a single location, could not establish a factual nexus with  approximately 200 different locations across the country); Guillen v. Marshalls of MA, Inc., No. 09-CV-9575 (LAP) (GWG), 2012 WL 2588771, at *1-2 (S.D.N.Y. July 2, 2012) (denying conditional certification because a "handful" of affidavits recounting "individual incidents" could not form a factual nexus between plaintiff's claims and the claims of thousands of other employees nationwide); Jenkins v. TJX Companies, Inc., 853 F. Supp. 2d 317, 324-25 (E.D.N.Y. 2012) (denying conditional certification because plaintiff's conclusory allegations and testimony were not sufficient "to certify a class consisting of over 700 employees at more than 200 stores nationwide").

Finally, Defendants attack the Plaintiffs' claims on the merits, by (1) offering declarations of their own, which resolutely deny the allegations put forth by the Named Plaintiffs, and (2) arguing that Plaintiffs have provided no reliable evidence that J.C. Penney is implicated in any alleged common plan or policy to violate the FLSA. See Marcus Decl. at Exs. 1, 3-9, 13, 16-23, 27. First, "courts in this Circuit regularly conclude that competing declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process." Marin v. Apple-Metro, Inc., Nos. 12-CV-5274 (ENV) (CLP), 13-CV-1417 (ENV)

12

(CLP), 2014 WL 7271591, at *2 (E.D.N.Y. Dec. 18, 2014) (quoting Winfield v. Citibank, N.A.,

843 F. Supp. 2d 397, 407 n.6 (S.D.N.Y. 2012)) (alterations and internal quotation marks

omitted). Second, "[a]t the conditional certification stage, 'the court does not resolve factual

disputes, decide substantive issues going to the ultimate merits, or make credibility

determinations.'" Ahmed, 2014 WL 5280423, at *3 (quoting Amador, 2013 WL 494020, at *2-

3). Therefore, it is inappropriate for the Court to resolve Defendants' competing affidavits and

contentions about the merits of the Plaintiffs' claims at this first stage of conditional certification.

       For the purposes of conditional certification, the Court thus finds that Plaintiffs have met

their burden of showing that they are similarly situated to a putative class of Sales Associates

employed at the Staten Island Store and the Manhattan Store during the relevant period.

                 ii.   The Other New York State J.C. Penney Retail Stores

       Plaintiffs' showing with respect to the other New York state J.C. Penney retail stores,

however, compels a different result. This Court has before it no firsthand evidence of violations

at any of the J.C. Penney retail stores in the State of New York, other than the Staten Island

Store. Rather, the Court has only hearsay statements from various Sales Associates at the Staten

Island Store, asserting their belief that the thousands of Sales Associates at the other J.C. Penney

retail stores in the State of New York were subject to the same or similar policies. Gallaway

Decl. at Ex. A at ¶¶ 15-16 (Afza Anjum) (naming three other Sales Associates at the Staten

Island Store); id. at Ex. B at ¶¶ 12-13 (Janet Terrana) (naming three Sales Associates at the

Staten Island Store); id. at Ex. C, ¶¶ 16-17 (Veronica Monahan); id. at Ex. D, ¶¶ 16-17 (Camille

Forest) (naming a Sales Associate at the Manhattan Store).[5]

---

[5]      Named plaintiff Veronica Monahan also claimed, during her deposition, that she had run
into an individual at an unrelated retail store in Woodbridge who stated that they had
experienced similar wage and hour issues while working at an unidentified J.C. Penney retail

This "belief" of the Plaintiffs is substantiated at least in part by the existence of the jTime Guide, which suggests J.C. Penney employees at different retail store locations in New York were subject to the same general instructions on the company's timekeeping system. Wilkinson Decl. at Ex. A. However, Plaintiffs' claims are not based solely on the policies stated in the jTime Guide, but also on the allegedly improper implementation thereof. Therefore, the mere existence of the jTime Guide—coupled with the Plaintiffs' hearsay allegations—is not sufficient to demonstrate that Sales Associates at all of the J.C. Penney retail stores in the State of New York (approximately 3,500 Sales Associates) were victims of the same misconduct alleged at the Staten Island Store. "Although [P]laintiffs' burden at this stage of the proceedings is modest, the [C]ourt cannot justify certifying a class of plaintiffs, likely numbering in the [thousands], on the basis of such thin factual support." Laroque, 557 F. Supp. 2d at 356 (granting conditional certification to employees at the store where plaintiff had been employed but denying conditional certification to employees at five other Brooklyn area stores, because plaintiff's sole factual support for including those stores was rebutted hearsay statements); see also Lujan, 2011 WL 317984, at *7 (granting conditional certification to employees at restaurant's New York locations but not to Florida locations because the Court had no "firsthand evidence of violations at the Florida restaurants").

Plaintiffs argue that, in Garcia, Magistrate Judge Boyle held that the modest factual showing required for conditional certification was satisfied by declarations from three named plaintiffs and one opt-in plaintiff, which is admittedly less than the number of declarations in this

---

store. Wilkinson Decl. at Ex. H, 10-12. This sparsely detailed hearsay statement, however, is hardly sufficient to establish the existence of similar wage and hour violations at all of the J.C. Penney retail stores in the State of New York.

case. 678 F. Supp. 2d at 92. However, in <u>Garcia</u>, the plaintiffs sought conditional certification of a far more limited scope—three restaurant locations, all owned by the same family. <u>Id.</u> at 93.

Similarly, Plaintiffs' other citations are easily distinguishable, as those cases involve conditional certification of a much narrower class of putative plaintiffs, a wider sample of evidentiary support, or both. <u>See, e.g.</u>, <u>Rosario</u>, 828 F. Supp. 2d at 517 (granting conditional certification to employees at twenty-seven department stores based on plaintiffs' allegations of wage and hour violations experienced in seven of those locations); <u>Cano v. Four M Food Corp.</u>, No. 08-CV-3005 (JFB) (AKT), 2009 WL 5710143, at *2, 6 (E.D.N.Y. Feb. 3, 2009) (granting conditional certification to employees of three grocery stores in New York, based off of the allegations of three named plaintiffs who were together employed at each of the locations); <u>Wraga v. Marble Lite, Inc.</u>, No. 05-CV-5038 (JG) (RER), 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006) (granting conditional certification to an estimated class of merely forty employees based on allegations of one employee); <u>Grant v. Warner Music Group Corp.</u>, No. 13-CV-4449 (PGG), 2014 WL 1918602, at *6 (S.D.N.Y. May 13, 2014) (granting nationwide conditional certification to student interns at the defendant companies, based off of "substantial evidence that [d]efendants' internship program was highly centralized, and that all interns were subject to the same policies, regardless of their location or . . . department").

Therefore, for the purposes of conditional certification, the Court finds that the Plaintiffs have not made even the modest factual showing required to demonstrate that they are similarly situated to a putative class of Sales Associates who worked at all of the J.C. Penney retail stores in the State of New York during the relevant period. Accordingly, Plaintiffs' motion for conditional certification is denied with respect to the Sales Associates at J.C. Penney retail stores in the State of New York, other than the Staten Island Store and the Manhattan Store.

iii.   Meal Deduction Claims

In urging this Court not to conditionally certify the class, Defendants also argue that the Plaintiffs' meal deduction claims do not state a violation of the FLSA, citing a recent decision by Judge Pamela Chen. See DeSilva v. North Shore-Long Island Jewish Health Sys., Inc., 27 F. Supp. 3d 313, 321 (E.D.N.Y. 2014) ("Without more, a legal automatic meal deduction for previously scheduled breaks cannot serve as the common bond around which an FLSA collective action may be formed.") Defendants are correct that "[c]ourts [in this Circuit] have recognized that automatic meal deduction policies are not *per se* illegal." Ellis v. Common Wealth Worldwide Chauffeured Transp. of NY, LLC, No. 10-CV-1741 (DLI) (JO), 2012 WL 1004848, at *9 (E.D.N.Y. Mar. 23, 2012) (quoting Wolman v. Catholic Health Sys. of Long Island, Inc., 853 F. Supp. 2d 290, 301 (E.D.N.Y. 2012), aff'd in part and rev'd in part on other grounds Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106 (2d Cir. 2013)) (internal quotation marks omitted). Additionally, "employers utilizing an automatic meal deduction policy may legally shift the burden to their employees to cancel the automatic meal deduction if they work through an unpaid meal." Briceno v. USI Serv. Grp., Inc., No. 09-CV-4252 (JS) (AKT), 2012 WL 4511626, at *6 (E.D.N.Y. Sept. 28, 2012) (quoting Wolman, 853 F. Supp. 2d at 301). However, an employer's *failure to compensate* an employee who worked with the employer's knowledge through an unpaid meal break—whether the employee reported the additional time or not . . . potentially violates the FLSA." Wolman, 853 F. Supp. 3d at 301 (emphasis in original); see also Hinterberger v. Catholic Health Sys., 299 F.R.D. 22, 38 (W.D.N.Y. 2014) (denying summary judgment on meal deductions claim, because question of fact remained as to whether defendant had knowledge of unreported, uncompensated time).

16

Furthermore, as Plaintiffs rightfully note, DeSilva involved a motion to decertify a class

that had already been conditionally certified, requiring the district court to apply the heightened

scrutiny of the second stage of class certification. 27 F. Supp. 3d at 319; see also White v. Baptist

Mem'l Health Care Corp., No. 08-CV-2478 (SHM), 2011 WL 1883959, at *10 (W.D. Tenn.

May 17, 2011) (noting, in decertifying a collective action with a meal deductions claim, that

courts conditionally certifying classes with similar claims "spoke at the lenient first stage" of

analysis).

This Court therefore finds that, at this early stage of conditional certification, it is not

appropriate to address the merits of the Plaintiffs' meal deduction claims, beyond showing that

the putative class members are similarly situated. See, e.g., Briceno, 2012 WL 4511626, at *7

(denying a Rule 23 class certification because "there was not a single, uniform policy for

correcting time-keeping errors" for automatic meal deductions); Colozzi v. St. Joseph's Hosp.

Health Center, 595 F. Supp. 2d 200, 209 (N.D.N.Y. 2009) (granting conditional certification to

nurses alleging uncompensated work during meal breaks but denying it to other non-patient care

workers, because the record did not suggest that these workers were similarly situated to the

nurses); Corcione v. Methodist Hospital, No. 14-CV-160 (LHR), 2014 WL 6388039, at *7 (S.D.

Tex. Nov. 14, 2014) (collecting cases and concluding that "these cases show that conditional

certification is warranted when the putative class members are all affected by an automatic

deduction policy and were subject to interruptions or actually interrupted on a regular or

recurring basis during their meal breaks"); see also Ahmed, 2014 WL 5280423, at *3 (noting that

the court does not "decide substantive issues going to the ultimate merits" at the conditional

certification stage).

Defendants further assert, however, that the Plaintiffs have not established that they are similarly situated, with respect to the meal deduction claims, because each office specialist had different policies for dealing with missed punches. The Court is not persuaded by this argument for two reasons.

First, while the testimony of the office specialists at their depositions does suggest some personal differences in resolving time sheet issues, the basic procedure remains the same: the office specialist reviews missed punches, compares those missed punches to the planned schedule, and attempts to communicate with the Sales Associate. The office specialist then either waits for the Sales Associate to confirm their missed meal or writes them down as taking their scheduled meal break, making any requested changes upon notification by the Sales Associate in a manual time sheet. See Wilkerson Decl., Ex. B at 33-35, 46-47, 70-72 (Bernice McDonnell – office specialist at Garden City retail store); id. at Ex. C, 53-56, 60-62, 66, 77-80, 85-88 (Delrose Bryan – office specialist at Bronx retail store); id. at Ex. I, 34-37, 69-75, 88-92, 100-101 (Lisa Thompson – office specialist at the Staten Island Store); id. at Ex. J, 19-20, 44, 47-48 (Benita Rios – office specialist at Queens retail store). Second, the Court has granted conditional certification to a limited class of putative plaintiffs—Sales Associates from the Staten Island Store and the Manhattan Store—thereby significantly reducing the likelihood of meaningful procedural differences amongst the office specialists.

Therefore, the Court sees no reason to omit the Plaintiffs' meal deduction claims from the conditional certification granted under Section 216(b) of the FLSA, as to those Sales Associates who worked at the Staten Island Store and the Manhattan Store during the relevant period.

18

2.     Information of Potential Plaintiffs

Plaintiffs additionally move for the Court to compel Defendants to furnish the names, last known physical addresses, last known email addresses, and last known telephone numbers of the potential plaintiffs to this collective action. Defendants make no objection to this request.

"Courts within this Circuit typically grant requests for the production of the names and last known addresses of potential opt-in plaintiffs when granting a motion for conditional certification as a collective action." Chen, 2014 WL 1338315, at *8 (directing defendants to produce to plaintiffs, *inter alia*, the names, last known mailing addresses, and telephone numbers of the potential opt-in plaintiffs). Additionally, "given the reality of communications today . . . the provision of email addresses . . . is entirely appropriate." Pippins v. KPMG LLP, No. 11-CV-0377 (CM) (JLC), 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012); see also Sharma v. Burberry Ltd., 52 F. Supp. 2d 443, 465 (E.D.N.Y. 2014); Melgadejo v. S & D Fruits & Vegetables, Inc., No. 12-CV-6852 (RA) (HBP), 2013 WL 5951189, at *7 (S.D.N.Y. Nov. 7, 2013) (deeming email addresses to fall under "routine contact information necessary to effectuate notification"); but see Rosario, 828 F. Supp. 2d at 522 n.14 (determining that "[p]roduction of potential opt-in plaintiffs' email addresses" was "unnecessary at th[e] time").

As such, this Court grants Plaintiffs' request and directs the Defendants to produce to the Plaintiffs, within twenty (20) business days, the names, last known physical addresses, last known email addresses, and last known telephone numbers of the potential plaintiffs to this collective action.

3.     Adequacy of Proposed Notice

Finally, Defendants seek to amend Plaintiffs' proposed Notice by: (1) limiting the Notice period to three years; (2) limiting the scope of the proposed class; (3) deleting references to

"straight" pay; (4) informing potential class members about possible discovery obligations and costs, if they join this action; (5) providing the contact information for defense counsel; (6) requiring potential opt-in plaintiffs to send their consents to the Clerk of the Court; and (7) informing potential class members that J.C. Penney denies the allegations brought against it.

"Determining what constitutes sufficient notice to putative plaintiffs in a . . . collective action is a matter left to the discretion of the courts." Laroque, 557 F. Supp. 2d at 356 (citing Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 105-106 (S.D.N.Y. 2003)).

A.  Notice Period

Plaintiffs request that the Court authorize notice to current and former Sales Associates employed by J.C. Penney at any time within the past six years. Defendants argue that the notice period should be limited to the past three years, because the FLSA's statute of limitations is, at most, three years (for "willful" violations). Plaintiffs respond that a six year notice period is appropriate, because that is the statute of limitations for the related NYLL claims.

Courts in this district are split on whether the appropriate notice period for cases that assert both NYLL and FLSA claims is three years or six years. "Multiple courts in the Eastern District, including *this* Court, have held that where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims." Cohan v. Columbia Sussex Mgmt., LLC, No. 12-CV-3203 (JS) (AKT), 2013 WL 8367807, at *9 (E.D.N.Y. Sept. 19, 2013) (collecting cases) (emphasis added); see also Gardner v. W. Beef Properties, Inc., No. 07-CV-2345 (RJD), slip op. at *4 (E.D.N.Y. July 22, 2009), ECF No. 72 (authorizing a six year notice period "in the exercise of [the court's] broad discretion to facilitate inclusive notice that reaches all potential class members"). However, other courts in this district

20

have held that three years is the appropriate notice period, because "the purpose of a conditional certification motion is to notify and inform those eligible to opt in to the collective action, and time-barred former employees may not do so." McBeth v. Gabrielli Truck Sales, Ltd., 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011) (stating that "the growing trend in this district appears to be limiting the notice period to three years") (citing Lujan, 2011 WL 317984, at *9).

Having reviewed the arguments advanced by Defendants, this Court "sees no reason to deviate from its prior rulings absent a controlling decision from the Second Circuit." Cohan, 2013 WL 8367807 at *9. Therefore, the Court directs that notice of the collective action be issued to all Sales Associates employed by J.C. Penney at its Staten Island Store and Manhattan Store, now or during the past six years.

B.  Scope of the Proposed Class

Plaintiffs propose a putative class consisting of all Sales Associates employed in J.C. Penney retail stores in the State of New York at any time in the last six years. Defendants object that this definition of the proposed class is inadequate and propose the following definition instead:

> All current and former sales associates of J.C. Penney Company, Inc.
> ("jcpenney") who were or are employed within the past three (3) years, i.e.,
> between January 25, 2010 and January 25, 2014, at the jcpenney store located at
> 140 Marsh Avenue, Staten Island, New York, 10314, and who were required to
> perform unpaid "off-the-clock" work, such that they were not paid for all of the
> hours that they worked and/or did not receive overtime compensation at the rate
> of one-half times the regular rate at which they were paid for hours they worked
> in excess of forty (40) in one week.

Mem. of Law in Support of Defs.' Opposition to Pls.' Mot. for Conditional Certification under the FLSA, at 31-32 (E.D.N.Y. filed Aug. 22, 2013), ECF. No. No. 91.

This Court agrees with Defendants that the proposed Notice does not adequately define the class, as now conditionally certified. See, e.g., Laroque v. Domino's Pizza, No. 06-CV-6387

21

(DLI) (VVP) (E.D.N.Y. filed June 25, 2008), ECF No. 57 (approving amended notice that limited the proposed class to employees of the defendant's store in Coney Island—reflecting the limited conditional certification granted—and stated the wage and hour violations alleged in the complaint); Amador v. Morgan Stanley & Co. LLC, No. 11-CV-4326 (RJS) (S.D.N.Y. filed Feb. 8, 2013), ECF No. 78 (approving joint proposed notice that stated the specific wage and hour violations alleged in the complaint). However, Defendants' proposed definition is overly limiting, in that it restricts the notice period to three years, limits the applicable retail stores to the Staten Island Store, and does not encompass all of the wage and hour violations currently alleged. The Court therefore directs the Plaintiffs to refine the scope of the proposed class in the Notice to (1) explain that the class covers only the Staten Island Store and the Manhattan Store, and (2) specify the remaining wage and hour violations alleged.

C.  Straight Pay

Defendants further object to the references to "straight" pay in the proposed Notice, stating rightfully that this language refers to NYLL claims, not FLSA claims. Plaintiffs counter that, given a notice period of six years, it is appropriate to inform those individuals with both FLSA and NYLL claims that they may also have a claim for uncompensated straight wages.

To support their position, Plaintiffs cite Guzman v. VLM, Inc., a case in this district that allowed a six year notice period because the Court could exercise supplemental jurisdiction over the NYLL claims. No. 07-CV-1126 (JG) (RER), 2007 WL 2994278 (E.D.N.Y. Oct. 11, 2007). However, although the notice in Guzman articulated the wage and hour violations alleged under both the FLSA and the NYLL, the notice also clearly explained that a class had not yet been certified for claims arising under New York law. Guzman v. VLM, Inc., No. 07-CV-1126 (JG) (RER) (E.D.N.Y. filed October 26, 2007), ECF No. 31.

Therefore, Plaintiffs are directed to refine the scope of the proposed class in the Notice to include the remaining wage and hour violations alleged under the FLSA. To the extent that Plaintiffs should also choose to include a description of the state law violations alleged, such as uncompensated straight time, they are directed to explain, as in Guzman, that a class has not yet been certified for claims arising under New York law. Id.

### D.   Notice of Potential Discovery Obligations and Costs

Defendants request that the Notice inform putative class members of their potential discovery obligations, as well as inform them that they may be required to pay costs if they do not prevail. "Decisions in this district have disapproved including . . . information about costs," in notices to putative plaintiffs in a Section 216(b) collective action because of "'the remote possibility that such costs for absent class members would be other than *de minimis*,' as well as the risk of 'an *in terrorem* effect that is disproportionate to the actual likelihood' of significant costs." Lujan, 2011 WL 317984, at *11 (quoting Guzman, 2007 WL 2994278, at *8); see also Dilonez v. Fox Linen Serv. Inc., 35 F. Supp. 3d 247, 256 (E.D.N.Y. 2014); but see Moore, 276 F.R.D. at 61 (finding reasonable defendants' request to inform potential plaintiffs that "may be required to . . . pay costs if they do not prevail"); Slamna v. API Rest. Corp., No. 12-CV-757 (RWS), 2013 WL 3340290, at *4 (S.D.N.Y. July 2, 2013) (stating that notification that putative class members may be required to pay costs if they do not prevail "is appropriate, provided that the operative language makes clear that" it is only a possibility).

In contrast, "[c]ourts in the Second Circuit 'routinely approve' the inclusion of 'a neutral and nontechnical reference to discovery obligations'" in such notices, Dilonez, 35 F. Supp. 3d at 255 (quoting Velasquez v. Digital Page, Inc., No. 11-CV-3892 (LDW) (AKT), 2014 WL 2048425, at *12 (E.D.N.Y. May 19, 2014)), "to 'insure that opt-in plaintiffs understand that their

participation would entail greater obligations than participation in some Rule 23 class actions,'"
id. (quoting Lujan, 2011 WL 317984, at *11). "Therefore, the following language, which has
been widely accepted by courts in this Circuit," is frequently included in notices of collective
actions: "If you join this lawsuit, you may be asked to give testimony and information about your
work for [defendant], to help the Court decide whether you are owed any money." Id. (citing
Velasquez, 2014 WL 2048425, at *12) (alteration in original).

 The Court notes, however, that the proposed Notice already states, in the section titled
"What happens if I join the lawsuit?" that "[w]hile this suit is pending, you may be asked to
provide documents or information relating to your employment, or otherwise participate in
written and/or oral discovery proceedings and/or in a trial of this matter." Pls.' Br. in Support of
Mot. for Conditional Certification, Ex. E, at 3. To the extent that Defendants' seek to modify
such language to make clear that putative plaintiffs may be asked to give testimony, the Plaintiffs
are directed to so modify the Notice. The remainder of the Defendants' request is either mooted
by the existing language or deemed unnecessary by the Court.

 E. Defense Counsel Contact Information

 Defendants further request that the Notice contain the name, address, and telephone
number of defense counsel. "Courts in this Circuit have generally concluded that such
information is appropriate for inclusion in a notice of collective action." Slamna, 2013 WL
3340290, at *5; see also Moore, 276 F.R.D. at 61. Therefore, Plaintiffs are directed to add this
information to the Notice.

F.   Consents to Clerk of the Court

The proposed Notice directs those plaintiffs who choose to opt-in to send their "Consent to Join" form to Plaintiffs' counsel. Defendants request that the consents be mailed directly to the Clerk of the Court, to avoid discouraging the putative plaintiffs from selecting their own counsel.

"Courts within this Circuit have split on whether the consent forms should be returned to the Clerk of the Court or to plaintiff's attorney." Dilonez, 35 F. Supp. 3d at 257 (collecting cases). Some courts have found "that it is 'inappropriate' to require opt-in plaintiffs to send their consent forms to plaintiff's counsel because 'such a procedure implicitly discourages opt-in plaintiffs from selecting other counsel.'" Id. (quoting Rosario, 828 F. Supp. 2d at 521). Others, however, have noted that where the notice contains "plain language" that potential plaintiffs have the right to retain their own counsel, "the chance of a reasonable reader being unfairly discouraged from seeking other counsel is *de minimis* at best." Id.

After considering the above, as well as the "budgetary constraints and financial limitations faced by the federal courts," this Court finds that "the more practicable and efficient method of opting in is for the consent forms to be sent to plaintiffs' counsel." Id. at 258. However, Plaintiffs' are directed to make the following modifications to the Notice: (1) amend the section of the Notice titled "Do I have a lawyer in this case?" to state that if potential plaintiffs choose to join this lawsuit, "and agree to be represented by the Plaintiffs' lawyers," they will then be represented by Plaintiffs' lawyers; and (2) add language to the section of the Notice titled "Should I get my own lawyer?" that clearly states that potential plaintiffs have the right to retain their own counsel.

25

G. Denial of Allegations

Finally, Defendants request that J.C. Penney's denials of liability be included in the "Introduction" paragraph of the Notice, instead of "burying" them later in the Notice. Additionally, Defendants request certain changes to clarify that Plaintiffs' claims are merely allegations and are fully denied by J.C. Penney.

Courts in this Circuit have found it reasonable to include defendants' denials in the introductory section of collective action notices. See, e.g., Sexton v. Franklin First Fin., Ltd., No. 08-CV-04950 (JFB) (ARL), 2009 WL 1706535, at *12 (E.D.N.Y. June 16, 2009). Therefore, the Court instructs Plaintiffs to amend the Notice such that (1) the introductory bullet that states "The Court has not decided who is right and who is wrong" begins by stating that "JCP denies that it has done anything wrong and opposes this lawsuit"; and (2) the section of the Notice titled "Why did I get this notice?" includes the statement "JCP denies the Plaintiffs' allegations and contends that it properly paid employees for all time worked" before the sentence that begins "A trial may be necessary . . . ."

Given these clear denials, no additional denial language need be added to the section of the Notice titled "What is this lawsuit about?" See, e.g., Slamna, 2013 WL 3340290, at *5 (finding that, in light of the existing denials, "there [wa]s no need for inclusion of the additional language suggested by Defendants"). However, because the section of the Notice titled "What is [Defendants'] position" purports to state J.C. Penney's stance in this case, the Court is more sympathetic to Defendants' specific language requests for that section. Therefore, Plaintiffs are directed to amend that section of the Notice to include the language offered by the Defendants.

CONCLUSION

For the reasons stated above, Plaintiffs' motion for preliminary collective action

certification under Section 216(b) of the FLSA is granted, as to those Sales Associates who

worked at the Staten Island Store and the Manhattan Store, during the relevant period, but denied

with respect to other J.C. Penney retail stores in the State of New York. Within twenty (20)

business days from the date of this order, i.e., by July 3, 2015, Plaintiffs are directed to amend

the proposed Notice and submit the amended version for the Court's approval, and J.C. Penney is

directed to produce the names, last known physical addresses, last known email addresses, and

last known telephone numbers of each potential plaintiff.

Defendants' renewed request to strike the consent notices filed by the Opt-In Plaintiffs is

denied for the same reasons previously articulated by this Court. See Anjum v. J.C. Penney Co.,

Inc., No. 13-CV-460 (RJD) (RER), 2014 WL 5090018, at *12-14 (E.D.N.Y. Oct. 9, 2014).


SO ORDERED.


Dated: Brooklyn, New York
       June 5, 2015

                                        /s/ Judge Raymond J. Dearie


                                        RAYMOND J. DEARIE
                                        United States District Judge